## Morgan v. Commonwealth.

(Decided December 12, 1916.)

### Appeal from Lewis Circuit Court.

1. Indictment and Information—Time of Offense.—When time is not of the essence of the offense, the only requirement in an indictment is that it shall show that the offense was committed before it was found.

2. Indictment and Information—Sufficiency.—When the indictment alleges that the offense was committed on the same day that it was returned but refers to the acts constituting the offense by the use of verbs of the past tense, it sufficiently shows that the commission of the offense occurred anterior to the finding of the indictment.

3. Criminal Law—Appeal and Error—Discretion of Court.—The trial court is vested with a discretion as to whether he will want the testimony on the trial of a criminal case taken and transcribed by the official court stenographer, and it is not reversible error when such discretion is exercised without abuse.

4. Criminal Law—Challenges to Panel.—Under section 281 of the Criminal Code challenges to the panel, which includes the method

of summoning the jury, are not subject to exceptions and cannot be reviewed by this court.

5. Criminal Law—Evidence as to One's Age.—It is competent for one to testify as to the information which he has received concerning his age, but such information must have been given by one who stood in such a position as to produce the presumption that he knew as to the truth of the matter.

6. Criminal Law—Witnesses.—Where a question is competent and is answered by the witness but subsequently an objection is sustained to the question without withdrawing the answer of the witness from the jury, the error in sustaining the objection to the question cannot be considered to be prejudicial, as the effect of the testimony has been given to the jury by its not being withdrawn.

7. Adultery—Indictment for Adultery—Instruction.—Even if the offense of adultery is a lower degree of that for carnally knowing a female under the age of sixteen years, it is not error to instruct upon it when the intercourse is denied in toto by both parties upon a trial under an indictment for the latter offense.

ALLEN D. COLE, H. W. COLE, S. J. PUGH and W. E. PROCTOR for appellant.

M. M. LOGAN, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, Harry L. Morgan, was convicted in the Lewis circuit court of the offense denounced by section 1155 of the Kentucky Statutes, that of unlawfully carnally knowing Sallie Keeton, alias Sallie Trumbo, a female under 16 years of age, and not the wife of defendant. The jury fixed his punishment at confinement in the penitentiary for a period not less than ten years, nor more than ten years and one day. From the judgment rendered upon that verdict and refusing to grant him a new trial, defendant prosecutes this appeal.

Numerous alleged errors are urged upon us for a reversal of the judgment, but we deem it necessary to consider briefly only the following: That the demurrer to the indictment should have been sustained; that the court in refusing, upon motion of the defendant, to require the official stenographer to take the evidence heard upon the trial; that the defendant's motion to require the remaining three jurors, after the regular panel had been exhausted, to be drawn from the wheel instead of summoned from the bystanders; that the motion of defendant to

require another than Likens, the deputy sheriff, to summons the bystanders; that the motion in arrest of judgment after the verdict should have been sustained; that the court should have given an instruction authorizing a conviction for adultery; that incompetent evidence was admitted and competent evidence refused, and that a peremptory instruction should have been given to find the defendant not guilty offered at the close of the Commonwealth's testimony, and at the close of all the testimony.

The first indictment was returned on the 25th day of May, 1915, directly after which, the defendant was arrested and executed bond. On the 11th day of May, 1916, an order was entered quashing the indictment and re-submitting the case to the grand jury, which, on that day, returned the indictment upon which the trial was had. The indictment is in the usual form, but it states that the offense was committed on that day (May 11, 1916) and there is no express statement in it that the offense was committed *before* the finding of the indictment. It is therefore insisted that there is a failure to comply with the provisions of section 129 of the Criminal Code in that the requirement therein that the offense must be shown to have been committed before the finding of the indictment is not complied with.

The statement of a fact may be made in many ways. There is no prescribed form of expression which the indictment must contain in order to show that the thing spoken of is a past transaction, and any language which in its ordinary acceptation would indicate that the stated fact occurred at an anterior time as required by the law is sufficient, and if the language used justifies the interpretation that will uphold the proceeding, such interpretation will be given it, rather than to defeat the proceedings of courts in the investigation of crime by hypercritical criticisms or metaphysical technicalities. Rutland v. Comlth., 160 Ky. 77. Besides, the court had under consideration the precise question here in the two cases of Williams v. Comlth., 13 Ky. Law Rep. 893, and Comlth. v. Miller, 79 Ky. 451.

In the former case the indictment was returned on the 28th day of December, 1891, and it was stated therein that the offense had been committed on the 29th day of December, 1891, and there was no statement that the commission of the offense occurred before the finding of the indictment. The indictment, however, did contain,

as does the one in this case, in the charging paragraph, referring to the time, verbs of the past tense by saying that the defendant *"Did* break open and enter the depot building and *did* steal and carry away," etc., and this court, in holding this language in the indictment to sufficiently comply with the section of the Code, *supra,* said:

"Here the indictment found on the 28th of December puts the acts of the appellant in the past tense, and we cannot escape the conclusion that such past tense refers to time anterior to the finding of the indictment."

If the using of verbs indicating the past tense is sufficient to overcome the expressed statements in the indictment that the offense occurred on the day following its return, *a fortiori* would it be sufficient where the indictment fixes the date of the commission of the offense on the same day that it was found and returned.

In the latter case referred to the indictment was returned on the 24th day of November, 1880, and the offense therein was charged to have been committed on that same day. For the same reason the court held the indictment good and said:

"Although it would have been better and more accurate to have stated in express terms that the offense was committed before the finding of the indictment, the words used clearly imply such to have been the fact."

We are therefore convinced that the court properly overruled the demurrer to the indictment, and, inasmuch as the motion in arrest of judgment was based upon this same ground, it was also properly overruled.

There is another complaint made, which we failed to mention, of the action of the court in requiring the Commonwealth to elect what particular act constituting the offense it would rely on in the trial, defendant insisting that this was error because it permitted the Commonwealth to fix the date of the commission of the offense, when there had been no sufficient one as contended charged in the indictment. Inasmuch as we have seen that the defendant is in error as to the sufficiency of the indictment, he certainly cannot complain of the action of the court in confining the Commonwealth to a specific date, as, conceding the indictment to be good, as we have found, it would have been error prejudicial to the defendant for the court not to have done so. Newsom v. Comlth., 145 Ky. 627; McCreary v. Comlth., 158 Ky. 614, these cases holding that upon trials under this character

of indictment, the Commonwealth should be required to direct its evidence to a specific date, although evidence of the commission of the offense at other times might be heard as corroborative of the main act involved. Neither do we think it was prejudicial error to refuse to require the-official stenographer to take the testimony upon the trial. The statute upon the subject gives a discretionary authority to the court in the trial of criminal cases as to whether the taking of the testimony will be so ordered. In view of the fact that there were comparatively few witnesses, and each of their testimony was very short, we do not think that the discretion possessed by the court in regard to this matter was abused. There is nothing appearing in the record to show that any of the rights of the defendant were prejudiced by this refusal. Besides, there is no complaint made of this ruling of the court in the motion for a new trial, and it therefore cannot be considered, regardless of the nature of the error complained of.

Considering the two complaints concerning the alleged errors of the court in not completing the panel of the jury by drawing the remaining members from the wheel, and the one objecting to the summoning of bystanders by the deputy sheriff, Likens, it is sufficient to say that under the provisions of section 2247 of the Kentucky Statutes, authority is given to the trial court, after the regular panel has been exhausted, as occurred in this case, to supply the remaining jurors either by drawing their names from the wheel, or directing the sheriff to summons them from the bystanders, and if it be conceded that the discretion given to the court in that, section if abused would be reversible error, the answer is that there is nothing showing that such discretion was abused in this case. Further under the provisions of section 281 of the Criminal Code we could not review this action of the court, although erroneous. Deaton v. Comlth., 157 Ky. 308, and authorities therein cited.

The motion objecting to the summoning of the by-standers by the deputy sheriff, Likens, was sought to be supported by the affidavits of defendant and his attorney that this deputy was hostile to defendant; but according to the record, these affidavits were not filed until after the jurors had been summoned, the jury completed and sworn to try the case. It therefore becomes unnecessary for us to determine whether the ruling of the court would

have been prejudicial error if it had been informed by the affidavits before the summoning of the jury on the grounds of the objections made by the defendant. Furthermore, this supposed error is not relied on in the motion for a new trial, nor is it incorporated in the bill of exceptions, and under the rule of appellate practice in this court it cannot be considered by us on this appeal.

Considering the alleged error of the failure of the court to give an instruction submitting the defendant's guilt of the offense of adultery, it will only be necessary to say that the facts of this case did not authorize such an instruction, even if it be conceded that the offense of adultery is a lower degree of the one for which the defendant is indicted within the terms of section 263 of the Criminal Code of Practice. This court had under consideration a similar question in the case of Jones v. Commonwealth, 154 Ky. 752. However, the offense in that case was charged to have been committed upon an idiot instead of one under 16 years of age. The same complaint was made in that case as is made here, but the failure of the court to so instruct the jury was determined therein not to have been erroneous. It might be argued, however, that the case would be different where an idiot was involved from one where the female was a sane person, but, however this may be, in the case we are considering no act offending the law is admitted by either participant; on the contrary, each of them denies it, and if no act was committed which would constitute adultery, it is certainly not objectionable to refuse to submit that question to the jury, and we therefore find no merit in this contention.

In considering the remaining alleged error, it becomes necessary to give a short review of the testimony. According to the only eye-witness to the offense, it occurred the latter part of February, 1915, and his testimony as stated in the record in narrative form is:

"My name is Charley Osborne. I am 17 years old past. I live out on Laurel in this county. I know the defendant, Harry L. Morgan. He lives out in my neighborhood in sight of us. I work on a farm. Defendant works at 'ginning around.' I have known Sallie Keeton for two or three years. I first saw her the year she came to defendant's house to stay. She has been there about two years. She was working there and I saw her often. I saw defendant and Sallie Keeton together often. I saw

them together near his barn towards the last of February, 1915. I was before the grand jury in May, 1915, and this was in February before that. When I first saw them they were laying on a pile of hay. They were on the side of the hill from the house. She was laying on her back and he was laying on top of her with his face down. He was moving up and down. I was 35 or 40 feet from them. It was about sundown. I did not see them very long. They were not down there over a minute and a half after I saw them. Harry got up first and he held his hands down and helped her up, and then put his hands down like he was buttoning his pants. I have seen them together other times, have seen them going up and down the road together. This all occurred in Lewis county, Kentucky.''

His testimony, as shown upon cross-examination, developed nothing as we see it to weaken that given by him on his examination in chief. He states that the place where he testified about could not have been seen from the defendant's house, or any neighboring house because of obstructions which consisted of trees and farm buildings. Another witness, who was present at the birth of a child about seven and a half months from the time testified to by the witness, Osborne, testified as follows:

''I guess I am about 61 or 62 years old. I live out at Ruggles in Lewis county and acted as midwife, and so acted for about forty years. I never met Harry Morgan but once in my life. He came to my house. I practice midwifery. I never met Sallie Keeton but once. It was along about September, 1915. Apples were getting big and pawpaws were getting ripe. I should smile that I was with Sallie Keeton when she gave birth to a child, and acted as midwife at its delivery. It was a girl. After Sallie gave birth to the baby, I saw Doctor Morgan at my house. Could not say just how long it was after the birth. He said he was Doctor Morgan, and asked me if I attended the birth of that baby, and asked me to see the record book, which I had made and kept a record of birth as required by law, and thinking that because he was a doctor he had a right to see the record, I gave it to him. When I showed it to him he just jerked out that leaf and stuck it in his pocket. He said it was an illegitimate child.''

Other witnesses testified that during the time that the infant female lived at the house of defendant they had

frequently seen them together alone and upon occasions they would disappear in the forest and be gone for quite a while. Others testified that after the birth of the child the defendant admitted to them that he was guilty of its parentage, although this is denied by both the defendant and the mother of the child. It is shown, however, that the latter made similar statements to different witnesses. The defendant before the occasion spoken of by the witness, Mrs. Young, had carried the mother of the child to the home of his brother-in-law, a Mr. Lisle, who lived in Rowan county, and he frequently wrote her letters while she was staying at his brother-in-law's house, although there is nothing showing the contents of these letters. Some time before the institution of the prosecution the defendant left Lewis county and went to Harrison county, where he was arrested. After his arrest, and while he was being conveyed back to Lewis county, in charge of two officers, he requested to be permitted to get off at Winchester, through which they passed, and have a conversation with the girl, but this was refused him. One of the officers got off at that place to take charge of the girl and carry her back to Lewis county, and the defendant gave to him a note addressed to the girl, saying: "Sally, don't get scared and say nothing, but come along with him." There is also testimony that the girl, on different occasions, accused different persons of being the father of her child. In each instance where the defendant or other witness was contradicted in any statement made by them, and for which the foundation had been laid, the proper admonition was given by the court, although this was unnecessary as to any guilty testimony on behalf of the defendant. There are other circumstances which we do not deem it necessary to relate, but we will say, however, that the denials of the participating parties are of such a nature as not to be altogether convincing. Under this testimony, in the light of the rule in criminal cases that if there is any evidence looking to the defendant's guilt it is the duty of the court to submit the issue to the jury, it surely cannot be contended that the peremptory instruction to find the defendant not guilty should have been given upon the ground of insufficient evidence of the defendant's guilt. As this, and the alleged defect in the indictment, which we have considered, were the only grounds upon which such instruction was offered, we conclude that it was properly refused.

The only evidence admitted or refused which we deem it necessary to consider is that offered in behalf of the defendant from the girl, Sallie Keeton. She was asked as to her age, or rather as to the date of her birth, to which she answered: "I have been taught that I was born in 1898." Immediately after the making of this answer the Commonwealth objected to the testimony in this language: "Plaintiff objects to what the witness stated about what she had been taught as to her age. Objection sustained and defendant excepts." An avowal was then made by the defendant in this language: "The defendant states that if permitted he will prove by the witness, Sallie Keeton, that there is no record of her age, but she has always been taught that she was born on June 22, 1898." It may be conceded that the character of testimony referred to as to one's age forms an exception to the rule as to the introduction of hearsay testimony, especially so if the information was received from those sufficiently nearly associated with the person whose age is in controversy, as it may be presumed that they knew the facts; as, if that information comes from a member of the immediate family, and notably so if from either parent. But the avowal as made does not state from whom the witness had been taught as to the date of her birth. For aught that appears it may have been told to her by someone who stood in no position whatever to know in regard to that fact. However that may be, according to the record, the statement was made to the jury by the witness in the exact language of the avowal, and was never withdrawn by the court, there being no motion made to that effect by the defendant. All that the jury heard, if indeed that much, was the objection to the testimony and that it was sustained. Under such circumstances, we are unable to see wherein the defendant failed to get the benefit of the witness' testimony upon this point, conceding that it did not possess the vice hereinbefore referred to, and we therefore conclude that this error, if one, was not prejudicial to the rights of the defendant.

The grandfather of the girl, as well as her aunt, testified that they were present at her birth, which occurred on the 22nd day of June, 1899, which, of course, would make her 16 years old on the 22nd day of June, 1915, about five months after the offense is alleged to have been committed.

Upon the whole case we are constrained to the conclusion that none of the errors complained of are sufficient, under section 340 of the Criminal Code, to authorize us to reverse the judgment, and it is therefore affirmed.