## Estes v. Commonwealth.

(Decided April 18, 1922.)

### Appeal from Estill Circuit Court.

1. Indictment and Information—Sufficiency of Accusation.—Where an indictment sufficiently states a public offense constituting a felony, but instead of formally stating that the offense was committed before the finding of the indictment, alleges its commission on the day preceding that upon which the indictment was returned, such fixing of the time of the commission of the offense will be regarded as a substantial compliance with section 129, Criminal Code, requiring its commission to be alleged in the indictment as having occurred prior to the finding thereof. And in such state of case the Commonwealth on the trial will not be confined to the time of the commission of the crime alleged, but will be permitted to prove its commission at any other time before the finding of the indictment.

2. Criminal Law—New Trial—Review.—A mere recital in the motion and grounds for a new trial complaining that the trial court erroneously overruled a demurrer to the indictment, cannot on appeal supply the absence from the record of the order showing the filing or entering of the demurrer by the defendant and the ruling of the court thereon. In the absence of such order the court of appeals will not review the ruling of the trial court upon the demurrer complained of.

3. Rape—Evidence—Instructions.—On the trial of the appellant under an indictment charging the unlawful detention of a woman by him with the intent to have carnal knowledge with her himself, the refusal by the trial court of an instruction which would have permitted the jury to find him guilty of an unlawful assault, was not error, as the evidence all conduced to prove that he was guilty of the crime charged, or of no offense at all.

G. MURRAY SMITH for appellant.

CHAS. I. DAWSON, Attorney General, and THOMAS B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, Coleman Estes, was indicted by the grand jury of Estill county charged with the crime denounced by section 1158, Kentucky Statutes, viz.: unlawfully taking and detaining a woman, Minnie Lunsford, against her will, with intent to have carnal knowledge with her himself. His trial in the Estill circuit court under the indictment resulted in the return of a verdict

by the jury finding him guilty of the crime charged and fixing his punishment therefor at confinement in the penitentiary seven years. Appellant was refused a new trial in the court below, complaining of which, and of the judgment entered in conformity with the verdict, he was granted and is prosecuting this appeal.

It appears from the bill of evidence that the crime charged was committed in the village of Ravenna, Estill county, in the edge of which the prosecutrix, Minnie Lunsford, resides with her parents. The latter have seven children, Minnie, the eldest of the seven, being twelve years old and small of stature for a girl of that age. Minnie testified that on the occasion in question, which was between the first and fifteenth of August, 1921, the appellant, who was then unknown to her, went to the Lunsford home where she and the younger children were without the presence of a grown person and asked her if her parents were in. Upon being told by her that both were absent, the father at work and the mother out in town, he pushed the door open and entered the house without an invitation from her, seated himself in a chair and immediately gave her two packages of chewing gum, which she divided with the other children. What then followed can better be told in Minnie's own language:

"Then he told me to come over there and I told him 'no, I am not coming.' He kept telling me to come over there and I told him 'no, I am not coming;' and he pulled me over there and wanted me to go upstairs with him, tried to get me to go upstairs with him, and I told him 'I wasn't going.' He offered me money to go up there with him, and then tried to get the children to go out of the house, and I said 'no, they are not going out;' and told them for them every one to stay in there. And he offered me money to make them go out and I wouldn't do it; and he went and pulled my clothes up and run his hand up my drawers and stuck his finger in me, and when he did that I went to screaming. And he said 'if you tell this I will kill you,' and went and put his hand in his pocket. I thought he went in there after his knife and went and screamed again, and he turned me loose, and I went to the dresser. He asked me to tell him goodbye and I said 'no, I am not going to do it.' When he did that I went and run over to the window. He went out the door and my little sister said he was saying something when he went out the door."

None of the younger Lunsford children testified on the trial of appellant, presumably, on account of their extreme youth, but there was abundant corroboration of Minnie Lunsford's testimony by that of her mother and three women residing very near the Lunsford residence; one of them, Mrs. Chaney, on an adjoining lot; another, Mrs. Back, on a lot facing it from the opposite side of the railroad track; and the third, Mrs. Irvine, at a distance of 100 yards up the railroad track. Mrs. Chaney, Mrs. Irvine and Mrs. Back all testified that they heard the screams of Minnie and the younger children in the Lunsford house and after they ran out of the house, but were unable at first to determine whether the noise was made in play or from fright. Mrs. Chaney also testified that Minnie called to her as she and the other children ran out of the house and complained to her of what appellant had done, but that he was not seen by her. Mrs. Irvine testified that she saw appellant, then unknown to her, enter the Lunsford house, and that shortly after he left it, and while the screaming from the Lunsford children was going on, she saw him pass her residence. She went to or met Minnie Lunsford and the younger children after they left their house and discovered that they were greatly excited and frightened, and upon being told by Minnie of what appellant had done to her, she sent her to her grandfather, who procured a warrant for appellant under which his arrest resulted. Mrs. Back, who was walking from her home to some place in town, testified that after the screaming in the Lunsford house began, she saw the appellant walking a few yards ahead of her in the same direction pursued by her, but that he was then unknown to her.

According to the testimony of Mrs. Eliza Lunsford, mother of Minnie Lunsford, she and her husband were well acquainted with the appellant, from whom they formerly had received occasional visits, the last occurring about six years before his arrest for the crime charged in the indictment; that upon her return to her home on the day of and shortly after its alleged commission, she learned of the appellant's mistreatment of her daughter, Minnie, found the latter in tears and greatly frightened, and that there was blood upon her clothing produced, as she then complained, by the wrongful acts of the appellant in inserting his finger in her private parts.

The appellant, in testifying on his own behalf, admitted that he entered the Lunsford home in the absence

of Lunsford and his wife at the time fixed by the testimony of the Commonwealth's witnesses; that he was then to some extent under the influence of intoxicating liquors and had some whiskey in his pocket; and, also, that he gave Minnie Lunsford two packages of chewing gum, as stated by her, but denied that he committed any of the wrongful and unlawful acts testified to by her and relied on by the Commonwealth to establish his guilt of the crime charged in the indictment. The only other witnesses introduced by the appellant were three persons as to character, two of whom admittedly were unacquainted with his general reputation for morality, and the third could only say that for several years he had known little of his reputation for morality, but had heard nothing against him.

Keeping in mind the foregoing material facts disclosed by the evidence, our remaining duty is to consider the several grounds relied on by the appellant for a reversal of the judgment appealed from. The first is alleged error of the trial court in overruling his demurrer to the indictment. It is not claimed that the indictment does not state a public offense, but insisted that it is fatally defective because of its failure to state, as required by the Criminal Code, section 129, that the offense therein charged was committed before the finding of the indictment. This contention might be disposed of with the statement that as the record before us does not show the filing or entering by the appellant of a demurrer to the indictment in the court below, or the overruling of same by that court, the question of its alleged insufficiency now raised by him should not be considered by us on this appeal. A mere recital in the motion and grounds for a new trial that a demurrer should have been sustained to the indictment, or was overruled, cannot supply the absence from the record of the order showing the filing of the demurrer and the ruling of the court upon it. Nor can the complaint that a demurrer should have been sustained to the indictment made by appellant in the motion and grounds for a new trial filed in the court below, be treated by us on appeal as a motion in that court in arrest of judgment, as held in Daniels v. Commonwealth, 181 Ky. 365, for here the indictment does state a public offense and it is claimed to be defective only by reason of its failure to allege that the offense charged was committed before the finding of the indictment.

Waiving, however, further discussion of this feature of the case, we think it sufficient to rest our decision of the question under consideration upon the ground that the indictment does substantially allege that the crime charged was committed before the finding of the indictment; therefore, a demurrer to it, even if shown by the record to have been filed, should have been overruled. It appears from the record both by an order and the endorsement on the indictment that it was returned September 27, 1921, therefore it should be treated as having been found by the grand jury as of that date; and as it is alleged in the indictment that the statutory crime therein charged was committed by the appellant September 26, 1921, and the time thus stated was a day before the day upon which the indictment was returned, it clearly fixed the commission of the crime as occurring before the finding of the indictment. This, as held in Commonwealth v. Cain, 14 Bush 525, and Morgan v. Commonwealth, 172 Ky. 684, was a substantial compliance with the requirement of section 129, Criminal Code, because the court is authorized on demurrer to assume that the offense was committed on the date and at the time charged in the indictment, though the Commonwealth on the trial is not confined to the time alleged, but will, if the offense be a felony, be permitted to prove that it was committed at any time before the finding of the indictment.

The appellant's second and final contention that the trial court erred in refusing to instruct the jury on the common law respecting assault, is as lacking in merit as was the first. We do not think the refusal of such an instruction error, as under the evidence appellant was guilty of the statutory crime charged, or of no offense at all. If the testimony of the prosecuting witness was believed by the jury they could but find him guilty as charged. If the appellant's testimony truthfully disclosed all that was said and done by him while in the Lunsford house, he should have been acquitted by the verdict of the jury, but in view of all the facts and circumstances presented by the evidence of the Commonwealth, we are not surprised by the verdict returned. No reason is apparent from the evidence for any motive on the part of the Lunsford girl for misrepresenting the facts, and her evident terror and that of the younger children when and after appellant left their home, as shown by their conduct and the testimony of their neigh-

bors, as well as the blood upon her clothing, all corroborate her story of his misconduct and conduce to prove that such conditions must have been produced by outrageous misbehavior on his part.

In order to constitute the crime charged it was not necessary that there should have been proof of appellant's saying to the girl that he wished to have carnal knowledge of her. Such intention and her detention by him for carrying it into effect may be inferred from the facts showing the laying of his hands upon her, the handling of her person and his efforts to get her away from the other children, all of which was fully made to appear on the trial. It is apparent, therefore, that the instructions given by the trial court were all that should have been given in the case. The appellant had a fair and impartial trial, and if guilty as found by the verdict of the jury he could not have expected that the punishment to be inflicted would be lighter than was awarded him.

Judgment affirmed.