## Barringer Land Company v. The Barber Asphalt Paving Company.

(Decided June 18, 1912.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

Street Improvements—Power of General Council of Louisville to Compel Payment by Abutting Property Owner—Ordinances—Change in Plan of Street Construction by Board of Public Works.—Sections 2826, 2834 and 2837 of the Kentucky Statutes, vest in the Board of Public Works, where the council has directed a street improvement, the power to carry out in detail the work so directed, on the idea that in the matter of these details the Board of Public Works is better calculated to look into each and properly guard the interests of the city than the general council can possibly be with the limited time at its disposal. In view of these provisions the change in the plans of the street improvement made by the Board of Public Works did not invalidate the ordinance, or the contract under which the streets upon which appellant's property abutted were improved, and the

lower court properly awarded judgment against appellee and adjudged a lien on the abutting property to secure the payment of the apportionment warrants.

HARRISON & HARRISON, HELM BRUCE and BRUCE & BULLITT for appellant.

WILLIAM FURLONG for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

We have here the oft recurring question of the power of the General Council, of the city of Louisville, to compel payment by the abutting property owners for street improvements, as tested by the legality, or validity, of the preliminary proceedings taken by the council directing such improvements, and the issue is squarely made as to whether the General Council must fix the grade upon which a street shall be constructed at the time the work is ordered, or whether this is a matter which can be left to the Board of Public Works, subject to the ratification of the Council.

The appellee filed its two separate actions upon apportionment warrants issued against the appellant land company. These warrants were issued to the appellee as contractor for the improvement of two contiguous sections of Edgeland avenue. The first section was from Bardstown road to the center line of Everett avenue, and the second section was from the center line of Everett avenue to Peter avenue. The section from Bardstown road was 722 feet, and that from Everett avenue to Peter avenue was 350 feet. The improvement for the two sections was provided for under ordinance and contracts of the same date, and the two contracts were completed at the same time.

Unfortunately, or fortunately, owing to. the point of view, the land company owned all the lots but one on the east side of the first section, and all the lots on both sides of the second section. The lots on the first section were assessed for the improvement $4,278.22, and the lots on the second section were assessed $5,861.65. Two separate actions were filed, but later consolidated and prosecuted as one. The lower court awarded judgment against the land company and adjudged a lien on the abutting lots to secure its payment. The land company appeals and contends that the judgment was erroneous for the reason that the contracts, under which appellee

did the work, are void because the grade, upon which the street was constructed, was not established by ordinance prior to the contracts.

It appears that in January, 1907, the General Council by ordinance ordered the opening and construction of Edgeland avenue and fixed the grade at 7 per cent, that is, an ascent from a horizontal of 7 feet in 100 feet. No further proceedings were had until April, 1909, when the Board of Public Works recommended to the General Council, and the General Council at proper intervals in April and May, 1909, approved the recommendations for the improvement of the two sections of Edgeland avenue by ordaining that the carriage way of Edgeland avenue should be 36 feet in width, "and shall be improved by grading, and paving with vitrified block gutters, and asphalt pavements." No grade line, or point, is named in these resolutions, and no reference is made to the 1907 ordinance establishing a 7 per cent grade.

In due course, the Board of Public Works prepared plans, specifications, and drawings for the proposed improvement, and same were formally placed on file in its office August 12, 1909, and advertisements thereof made in the newspapers, all as required by law, asking for bids. But the grade line embodied in these plans was 4 per cent; that is, an ascent from the horizontal of 4 feet in 100. These plans and specifications embodying the 4 per cent grade were approved by the council August 16, and by the Board of Aldermen August 20, and appellee's bid for the work as advertised thereon was accepted by the Board of Public Works August 27. And in September, 1909, the contract, which had been awarded appellee, was approved by the General Council.

The proof shows that the additional cut or excavation caused by the change in grade was 5.8 feet at the intersection of Everett avenue and about 2 feet at Peter avenue, and for a distance of about 200 feet this added excavation was in solid limestone rock. On the section from Bardstown road toward Everett avenue for 350 feet there was no change in the grade. The proof also shows that the expense incident to the 4 per cent grade exceeded that of a 7 per cent grade on the section from Bardstown road to Everett avenue $540 and on the section from Everett to Peter avenue $1,539, or a total of $2,079. While resisting the entire assessment as illegal,

the appellant insists that in any event this added cost of $2,079 should not be taxed against it because, as he claims, the change in grade was never authorized by ordinance or by the General Council. It is admitted that the appellee fulfilled- his contract with the Board of Works in every particular, and the work was done in a satisfactory manner; and that, aside from any damage appellant may have sustained by reason of the deep cut through its land, it has, and will receive all the compensating benefits that would accrue through the street improvement. It must also be admitted that if payment is refused it for the work it will be because of an error, or informality in the proceedings of the General Council ordering the work, and not through any default of his.

It is not shown into just how many lots appellant's property on Edgeland avenue has been divided. Cases involving these questions are ordinarily at the instance of a single lot owner. If the amount involved here should be apportioned to each separate lot, the assessment per lot, perhaps, would not appear to be such a serious matter. The aggregate is large because the appellant owns a large amount of property, but his benefits are co-extensive.

Prior to the act of 1893, providing a new charter for the city of Louisville, that is, for cities of the first class, the case of Hydes v. Joyes, 4 Bush, 465, was the leading case on the power of the city council to make street improvements at the expense of the abutting lot owners. That case came up on an ordinance to "grade and pave * * * Fulton street, Portland, between Market street and Water streets, *or such portions of said work as the city engineer may direct.*" And the court held that this discretionary power delegated to the city engineer was illegal because the council had no power to delegate to any other body or person the determination of the kind or character of improvement. No question of grade seems to have been involved in that case. The objectionable feature was that the city engineer might arbitrarily, and with partiality impose improvement burdens upon some property owners between Market and Water streets, and relieve others. It is true that the court in discussing that case held that the kind and character of improvement which could not be delegated included the *grade,* the materials, and the width of the pavement, and said that these things should be determined before the

adoption of the ordinance. The court in strong terms condemned ordinances which in general terms provided for street improvement, and used this language, "to allow such an ordinance to bind a property holder is to destroy all the safe guards thrown around him by law." This case is typical of the limitations placed upon the power of the city to improve its streets at the expense of abutting property owners under its old charter. No doubt these limitations upon the power of city officials were ample safe guards against their abuse of power, but it is not unlikely that the effect was to leave them weakened in administrative efficiency. As a matter of course these improvements must be made at the expense of the city taxpayers as a whole, or of the abutting property owners. Upon the theory that these abutting owners are the direct beneficiaries all the burden of original improvement is placed upon them. But in view of the strict limitations and rigid requirements as to fulfilling every detail of statutory legislation according to the rule which beyond question formerly prevailed, and which appellant insists is still applicable, there was constant and imminent danger of all the proceedings being declared void because of a failure to comply with some detail, and thereby all the expense be lost which had been incurred. For these reasons it is entirely probable that contractors discounted that hazard in advance with the result that all these intended safeguards for the property holder served merely in the end to increase his burden.

The Legislature undertook to remedy this situation when, by the act of 1893, a board of public works was created, and by section 2825 was given "*exclusive control* over the construction * * * platting * * * grading * * * of all streets, etc." Under the old charter all these matters were under the exclusive control of the General Council. Section 2826 demands concurrent action, however, by the General Council and the Board of Public Works in one class of street work. That section provides that "No public way shall be opened, widened, narrowed, closed, or constructed, * * * except by ordinance recommended by the Board of Public Works." The evident purpose of this section was to reserve to the council its law making, or legislative function of deciding by ordinance when and what land shall be taken or rejected for street purposes, and whether a street already opened or improved shall be widened, or

narrowed, or entirely closed, and whether the cost of construction of streets affected by the ordinance shall be placed upon the abutting property owners; if it is a street to be opened, whether the council is willing to place upon the city the burden of thereafter maintaining it. By this statute the amount of such cost is not then required to be estimated or stated, much less the details of construction entering into the expense. These details are minutely provided for in subsequent sections of the statute but they are all subject to final approval by the council. A careful reading of all of section 2826 will show with what care the city is protected against indiscriminate mapping, building or dedication of streets by unauthorized persons, and how before such responsibility can be assumed or imposed upon the city it must be recommended by the Board of Public Works and approved by the City Council. It will be noticed that the General Council and the Board of Public Works derive their power and authority from the same source, viz.: The State Legislature. The Board of Public Works is an appointive office, while the members of the council are elected by the voters in the city, and is, therefore, the legislative board for the city, and to it, of course, is confined all legislative functions, and it seems to us it has performed that function when it by ordinance provides for opening or construction of a street in terms like the ordinance in this case, and thereby gives expression to the legislative will as to whether the city, or the abutting property owners shall bear the expense of its construction, and whether there shall be placed upon the city the burden of its maintenance thereafter Whether wisely or not, all the details of construction have been placed in the hands of the Board of Public Works. In doing so, however, the safeguards of the individual property holders have not been overlooked. The same power that could protect them under the old charter still has that power at every stage of the proceedings and construction. The effect of the provisions in the present charter is to so relax the rigid rules and restrictions of the former as to give flexibility to the workings of the General Council and the Board of Public Works and to eliminate the chance of injustice being done to anyone, and take away any justification for exacting an extra price for contract work. Original construction and improvement of city streets is not such a

simple matter that all the requirements can be foreseen, and every important detail provided for in the ordinance directing it. Who can say that any detail is not important? In advance of the work there is no clear line of separation between major and minor details. There are too many difficulties of a physical kind to be overcome, and so many individual and public interests to be reconciled that under present conditions it is unreasonable to require in advance specifications of details. For instance, if the cut through appellant's property had been made no deeper than the 1907 ordinance provided, it would have necessitated a higher fill at the Peter avenue intersection, or else subject travel over Edgeland avenue to the inconvenience of a hill so steep that appellant's own engineer admits would have been dangerous. To permit the shallow cut and eliminate the steep grade would, as above stated, have forced a higher fill at the Peter avenue intersection and this would have caried with it the necessity of filling up Peter avenue to the same grade. It is not to be supposed that the lot owners adjacent to these fills, and whose lots were thus made lower than the street grade, would submit to this in silence. Necessarily, the execution of such work requires the very best engineering skill and advice. The initiation of the work is legislative in character, and therefore it is incumbent upon the council to say whether the street shall be opened and improved for public use, and in view of its connections and situation determine whether it will be a main thoroughfare and improved to accomodate light or heavy traffic. A decision here will in itself determine the width of street and kind of pavement. When these matters are settled by ordinance the question is then by statute properly referred to the Board of Public Works, and this Board after considering the paving required and probable traffic to be accommodated and facilities for drainage of surface and storm waters and the grade line of connecting and intersecting streets now, or to be improved hereafter, fixes the grade. It is essentially an engineering problem. If it were necessary by Statute in order to render the ordinance valid to show in it the grade, the State Legislature, by section 2830 of the Statutes, gave to the Board of Public Works the power to make alterations or modifications in the specifications or plans of a contract when in the opinion of the Board it shall become necessary in the prosecution of any work.

So this matter of grade is not now a question of unauthorized delegation of power to a ministerial board or person, by the General Council. Both boards are created by and get their power from the some source, and, except legislative functions, the State lawmaking power has a right to confer these powers upon either board as it may choose.

By section 2837, when the improvement shall have been completed the Board of Public Works before accepting it, and awarding apportionment warrants to the contractor, shall give newspaper notice of the time and place fixed for the inspection and reception of the work by the board, and any owner may appear and be heard "as to whether such improvements have been made in accordance with the ordinance authorizing same, and the contract therefor." As a final bar to all objections because of informality or irregularity, section 2834 provides that *"no error in the proceedings of the General Council* shall exempt from payment if the work has been done as required by either the ordinance or contract; but the General Council or the courts in which suits may be pending shall make all corrections, rules and orders to do justice to all parties concerned." No meaning can be read into this other than a determined purpose to see that justice should not be defeated by a technicality.

Since it was the evident intention of the Legislature by this act of 1893 to get away from the harsh requirements prior thereto, and give to the regularly constituted city authorities the power to make its public improvements as other such work is done by private concerns, why should not the courts accept the legislative will, and take these statutes for what they say? It is not for us to say whether the powers were wisely granted, it is sufficient that they were authoritatively granted; and the authority of the Legislature in this regard is not questioned. But we are met here by the contention from appellant that the sections of the Statute above referred to have made no change in the nature of the power exercised by the General Council under the old charter. And in support of this statement the case of Mehler v. Richardson, 111 Ky., 408 is referred to. As a general proposition the statement is correct. The General Council is still the final arbiter under the new charter as well as the old on all questions of street improvement, and has the power to effectively reject or approve

any proposal to that end. It may refuse to open or construct the street; it may refuse to adopt the grade established or any detail of construction recommended by the Board of Works, but to contend that the Board of Works did not, after the ordinance, have power to fix the grade with the other details in its plans and specifications, and submit them to the council for approval, and make them binding and effective when approved by the council would be to negative the plain provisions of the Statute, and nullify the legislative intent. These views are not inconsistent with those expressed in the Richardson case, supra. That case involved an ordinance of the same general terms as the case at bar, but for details reference was made to plans and specifications on file in the office of the Board of Public Works. As a matter of fact there were no such plans or specifications, and the court held that a reference to them added no force to the ordinance. The result was to bring up for decision the validity of an ordinance in substantially the same form as the one now under consideration. The court held that the ordinance was valid and enforced an improvement lien based on it.

In the latter case of Barber Company v. Garr, 115 Ky., 340, the court in construing the sections of the Statute above referred to, and the powers conferred upon the city council and the Board of Public Works, thereunder uses this language:

"These three sections must be read together and evince, when taken together a purpose on the part of the Legislature in creating the Board of Public Works, to vest in it where the council has directed an improvement in general terms, the power to carry out in detail the work so directed on the idea that in the matter of these details the Board of Public Works is better calculated to look into each and properly guard the interest of the city than the General Council can possibly be with the limited time at its disposal."

The ordinance in the case just referred to was also in terms substantially the same as the one at bar, except that it referred to plans and specifications filed in the office of the Board of Public Works, but the contract was not made in accordance with those plans. On the authority of the Richardson v. Mehler case, supra, and the sections of the Statute, the court held that the change in plans made by the Board of Public Works did not

invalidate the ordinance or the contract, and compelled the property owner to pay for the improvement.

We conclude that the ordinance was not invalid and that the contract made under it pursuant to plans and specifications of the Board of Public Works, and approved by the General Council, is enforceable. The judgment therefore is affirmed.