## Tull v. Commonwealth.

(Decided March 12, 1920.)

### Appeal from Jessamine Circuit Court.

1. Criminal Law—Evidence—Setting Aside Verdict.—Where the evidence in a criminal case is contradictory, the verdict of the jury, under proper instructions, will not be set aside as flagrantly against the evidence.

2. Criminal Law—Presence of Defendant's Counsel at Trial.— Whether it is essential in a criminal case for defendant's counsel to be present when the jury returns its verdict, under defendant's constitutional guaranty "to be heard by himself and counsel," and if so whether such guaranty was waived by a failure to call the court's attention to it at the time, are questions not decided, because the fact of the absence of counsel is not manifested and made a part of the record by a bill of exceptions, but is shown only by the affidavits of defendant and his counsel filed upon the hearing of the motion for a new trial, which is an insufficient method of incorporating the alleged error in the record.

3. Appeal and Error—Bill of Exceptions.—All proceedings and facts not required by the rules of practice to be enrolled upon the record of the court, in order to become a part of the record must be incorporated in a bill of exceptions certified in some of the methods provided by law, otherwise such proceedings and facts not required to be enrolled will not be considered as a part of the record on appeal.

JOHN H. WELCH for appellant.

CHARLES I DAWSON, Attorney General, and THOMAS B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On his trial under an indictment in the Jessamine circuit court for the murder of George Bowman, the appellant, Nathaniel Tull, was convicted of voluntary manslaughter and his punishment fixed by the verdict of the jury at confinement in the penitentiary for the period of twenty-one years. From the judgment pronounced on

that verdict, and the order overruling his motion for a new trial, appellant prosecutes this appeal.

The only grounds urged for a reversal are (1) that the evidence is insufficient to support the verdict, and (2) that defendant's counsel was not present when the court received the verdict and discharged the jury, and defendant was thereby deprived of his constitutional right "to be heard by himself and counsel."

In disposing of the first contention it will be necessary to make a brief reference to the testimony heard upon the trial. The parties involved are colored people, and the killing occurred between ten and eleven o'clock at night in front of a colored church in the town of Wilmore, at which place some kind of school entertainment for colored people had been held, but which was about over. During the entertainment there had been some little disturbance in the house, in which some one is alleged to have struck a young step-daughter of a sister of the deceased Bowman, and which, according to defendant and some of his witnesses, angered the deceased, causing him to make some threatening remarks; all of which, however, is contradicted by the witnesses for the Commonwealth.

It furthermore appears from the testimony of the defendant and his witnesses that during the progress of the entertainment one George Williams became unruly in the house, and some of the attendants, in order to prevent a difficulty, took a pistol from Williams and gave it to the defendant, with directions for him to take the pistol to his home just across the street, and Williams was put out of the house. Shortly afterward the entertainment closed, and a crowd gathered in front of the church, and in some unexplained manner a difficulty started, near the walk leading from the church to the street, in which the brother of the defendant was knocked down, though no one claims that deceased took any part in that difficulty.

A number of witnesses for the Commonwealth testified that while the difficulty was in progress the defendant came rushing across the street, from the direction of his home, with a pistol in each hand, and said in substance: "Look out! I am going to kill everybody," and immediately fired a shot at Jourd Bowman, a brother of the deceased; that almost instantly he turned and shot

the deceased, who was talking to some one and making no effort to participate in the fight or to assault in any manner the defendant or any one else.

The defendant, and two or three witnesses who testified in his behalf, swore that he had but one pistol, which was the one given him in the church when taken away from Williams; that he was carrying that pistol to his home when he discovered the fight taking place in front of the church; that he returned and asked the deceased what was the matter, or what was the trouble, when the latter replied, "What in the hell have you got to do with it?" and drew a pistol and fired at him, which firing he returned under circumstances which he claimed constituted self-defense; that after shooting deceased his brother, Jourd Bowman, made threatening demonstrations toward him, and he was shot at by defendant.

Numerically, the witnesses may be said to be about equally divided, but the circumstances support the theory of the Commonwealth rather than that of the defendant. It is shown that the deceased did not have a pistol at the time he was shot, nor a weapon of any sort. He was shot in the side, and there are other circumstances indicating that the shooting did not occur in the manner testified to by the defendant and his witnesses. At any rate there was a contrariety of testimony, making an issue for submission to a jury, which is the tribunal provided by law for the determination of issues of fact.

Neither does it appear that the verdict is flagrantly against the evidence. On the contrary, we are convinced that the preponderance of the testimony supports the verdict, which, being true, requires us to disallow the defendant's first contention.

The insistence for a reversal made under ground (2), if sufficient for that purpose under the facts disclosed by this record, is not presented in the proper form to require consideration at our hands. The only way that the fact of absence of defendant's counsel at the time the verdict was returned, as well as the circumstances thereof, is attempted to be manifested is by the affidavits of defendant and his counsel filed with the motion for a new trial, or when that motion was heard by the court. This, we are convinced, is not the proper way to bring the question to this court for review. It should have been incorporated in a bill of exceptions duly certified to by the

presiding judge, or in some other manner pointed out by the law. The office of a bill of exceptions is to bring to the appellate court for review such parts of the proceedings and facts occurring at the trial as are not required by the rules of practice to be enrolled on the order book or record of the court, and the only way such proceedings and facts as are not thus required to be enrolled can properly become a part of the record is by a bill of exceptions duly certified as required by law. 17 C. J. 122.

On page 130 of the volume of Corpus Juris, *supra,* it is said: "Errors not appearing on the face of the record proper in order to be reviewed must be made a part of the record by a bill of exceptions." See also Postell v. Commonwealth, 174 Ky. 272; Morgan v. Commonwealth, 172 Ky. 684; Henry v. Commonwealth, 169 Ky. 578; Beckett v. Commonwealth, 154 Ky 209; Commonwealth v. Hurst, 149 Ky. 135; Roberson v. Commonwealth, 148 Ky. 630; Combs v. Commonwealth. 31 Ky. Law Reporter 844; Young v. Commonwealth, 19 Ky. Law Rep. 929; Miller v. Commonwealth, 25 Ky. Law Rep. 1236, 1931, and Haverly v. Commonwealth, 95 Ky. 33.

Thus instructions given or refused not made a part of the record by a bill of exceptions or by order of court will not be considered upon appeal, although copied by the clerk in the record, and certified by him as being the ones offered or given, because not made a part of the record as required by law. Colley v. Commonwealth, 11 Kentucky Law Rep. 346, and Commonwealth v. Carter, 7 Kentucky Law Rep. 304, and many cases following them.

In the Haverly case it appeared in the motion and grounds for a new trial that the court permitted the jury to retire to their room in the absence of defendant's counsel, and without taking with them certain papers and exhibits used in the trial which, in the opinion of counsel, were necessary and proper. The matter complained of was not manifested by a bill of exceptions, and this court in declining to consider the alleged error, said: "It is sufficient to say that the circumstances indicated only appeared in the motion and grounds for a new trial. They are not shown to have in fact occurred."

In the Postell case the jury, while considering their verdict, returned to the court room and asked a question of the court, the answer to which it was claimed was

prejudicial to the defendant, and which this court · determined was true.  Such facts, however, were not made a part of the record by the bill of exceptions, and in denying a reversal for that reason this court said: "But, as this is not shown by the bill of exceptions, we do not reverse the case because of it, mentioning it only for the guidance of the trial and other courts in the future."

As the record before us stands, we have only the *ex parte* statements of defendant and his counsel as to the actual occurrence of the facts constituting the error relied on.  There is no certification of those facts according to any method provided by law, and under the rules governing appellate practice we are forbidden the right to consider the point attempted to be raised, were it not waived, and if it could be successfully insisted upon under the facts of this case, which for the reasons stated, is not determined.

Wherefore, the judgment is affirmed.