## Bruner v. Commonwealth.

(Decided October 9, 1928.)

### Appeal from Clay Circuit Court.

1. Criminal Law.—Grounds of motion for new trial, after conviction of murder, that commonwealth's attorney caused decedent's small son to cry pitifully before jury, put on bloody shirt worn by decedent at time of killing during closing argument to jury and called before jury decedent's child, who cried during part of argument, cannot be considered on appeal, in absence of exceptions or anything in bill of exceptions relating thereto.

2. Criminal Law.—Under Civil Code of Practice, secs. 336, 337, which govern bills of exceptions in criminal cases, Court of Appeals cannot determine what happened during trial from affidavits filed in support of motion and grounds for new trial; but trial judge must have declined to approve exceptions submitted to him before affidavits may be filed, under section 337, subds, 3, 5.

3. Homicide.—Evidence in murder trial held sufficient to sustain conviction.

4. Criminal Law.—The jury is the sole judge of the credibility of the witnesses.

5. Homicide.—Admission in evidence of clothing worn by decedent at time of homicide, without proof that it was in same condition as at such time, held harmless, if error, where record did not

show that it was ever exhibited to jury, objection to questions to witness about blood thereon was sustained; defendant admitted killing, and commonwealth did not attempt to establish any fact by introduction of clothing.

A. D. HALL, FRANK H. BAKER and JOHN M. QUINN for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

Dave Bruner was indicted by the grand jury of Clay county on the charge of murder, the allegation being that he shot and killed Jess Hammons unlawfully, willfully, maliciously, and feloniously. His trial before a petit jury resulted in his conviction, and his punishment was fixed at life imprisonment in the penitentiary. In his motion and grounds for a new trial he set up at least thirteen reasons why he did not have a fair and impartial trial. Some of his grounds would be serious if they were established, and if they were properly before the court. For instance, he alleged in his motion and grounds for a new trial that, by reason of certain things done by the commonwealth's attorney, a small son of the decedent was caused to cry heartbreakingly and pitifully before the jury. There is nothing showing any exception to this, if it happened, other than the statement in the motion and grounds for a new trial. It is not included in the bill of exceptions, and we have no means of knowing whether the happening took place or not. Another ground relied on in the motion and grounds for a new trial is that, while the commonwealth's attorney pro tem. was addressing the jury in his closing argument, he put on a bloody shirt, claimed to have been worn by the decedent at the time of his death, and paraded before the jury, making inflammatory remarks about the heinousness of the offense. There is nothing in the bill of exceptions relating to anything of this kind. Another ground relied on is that the commonwealth's attorney, in his closing argument, called a child of the decedent before the jury, and while he stood and cried he made a part of his argument, and that he sought thereby to influence the passions of the jury. Nothing relating to such an incident is in the bill of exceptions. Other conduct of the commonwealth's attorney in his closing argument to the jury is

made grounds for a new trial, but there is nothing in the bill of exceptions about any of these matters.

It is true that affidavits were filed, seeking to establish that these things happened, but this court, in such a case as this, cannot determine what happened during the course of the trial from affidavits filed in support of the motion and grounds for a new trial. A bill of exceptions in a criminal case is governed by the provisions of the Code relating to bills of exceptions in civil cases. It is provided by the provisions of section 336, Civil Code, that if the decisions objected to be entered on the record and the grounds of objection appear in the entry, the exception may be taken by the party by causing it to be noted at the end of the decision that he excepted. If the exceptions appear on the record, it is not necessary to again set them out in the bill of exceptions. The purpose of a bill of exceptions is to bring to the attention of the court things which happened during the course of the trial and which do not appear of record, and the bill must show what happened and what objections were made. This is what is required by the provisions of section 337 of the Civil Code. There is no place for an affidavit to establish occurrences during the progress of a trial and the objections made thereto, except in the case of a bystander's bill, if the judge refuses to sign the bill of exceptions tendered by the party. If the bill of exceptions be approved by the judge, so the provisions of section 337, Civil Code, provide, he shall sign it, and it shall be filed as a part of the record, but not spread at large on the order book. If it is not approved, he shall correct it or suggest the corrections to be made and sign it. If a party who has tendered a bill of exceptions objects to the judge's corrections of an exception which purports to state the evidence, he may, within five days after the bill is signed, file the exceptions as written by him, if its truth be attested by the affidavits of two bystanders. The truth of the exceptions so written by the party may be controverted by counter affidavits, and affidavits may be filed in support of the truth of such exceptions. It will be seen that the exceptions as written by the party must be submitted to the judge and the judge must have declined to approve the exceptions as written before affidavits may be filed. In this case there is nothing to show that a bill of exceptions containing the matters set out in the motion and grounds for a new trial were submitted to the judge for his approval. It will further be observed

that under the provisions of subsection 3 of section 337, Civil Code, it is only matters relating to the evidence where an exception written by the party and approval refused by the judge may be supported and controverted by affidavits. When the trial judge certifies as to his own ruling and exceptions taken during the trial, his statement cannot be assailed by bystanders, and neither can the truth of the record be assailed by bystanders. It has been so held by this court in Garrott v. Ratliff, 83 Ky. 384, 7 Ky. Law Rep. 463; Patterson v. Com., 86 Ky. 313, 5 S. W. 387, 9 Ky. Law Rep. 481; Patterson v Com., 99 Ky. 610, 5 S. W. 765, 9 Ky. Law Rep. 481.

There is another provision in section 337, Civil Code, embodied in subsection 5 which allows a bystander's bill of exceptions, but that provision has no application, except in cases where the judge who presided at the trial does not preside when a motion for a new trial is overruled. It was held in the case of Thompson v. Tyrie, 200 Ky. 741, 255 S. W. 526, that if the trial judge should refuse to approve and sign a bill of exceptions, or to make corrections in it, and then sign it, the proper remedy was to obtain a mandatory order from this court requiring him to do so. The trial judge has no discretion in the matter and must either approve the bill of exceptions tendered, or correct it so as to conform to the facts and then approve it. If he refuses to sign at all, the proper remedy is to obtain necessary orders from this court to compel him to do so; but this court has approved a bystander's bill of exceptions in order to prevent an injustice where the judge arbitrarily refused to sign any bill of exceptions. Carter Coal Co. v. Love, 173 Ky. 49, 190 S. W. 481.

Enough has been said to show that appellant is in no position to take advantage of alleged errors occurring on the trial, as he did not tender to the court a bill of exceptions in which alleged errors were pointed out.

The evidence in this case shows that the appellant, Dave Bruner, living on the head of Rockcastle river, in Clay county, shot and killed Jess Hammons on the public road near the home of appellant. There is a sharp conflict in the evidence. The two sons of the decedent, one about 14 years of age, and the other about 12, testified to what happened at the time of the killing. Their statements were that their father had called to them to come from the river, where they were fishing, and help him catch a mule which had broken loose from him. They

came to where their father was on the public road and started along the road following the mule. The appellant was at his barn unhitching a team of mules which he had been driving. As the decedent passed near him on the public road he spoke to him two or three times and walked towards him. When he was near the fence separating the public road from his premises, he drew his pistol and fired three shots into the body of decedent, killing him then and there. Both of these boys testified that the decedent had no weapon and made no demonstration of any kind indicating that it was his intention to do appellant any harm.

Martha Hammons, who lived nearby, and her three daughters, testified that the decedent had been about their place a few minutes prior to the time that he was killed, inquiring for appellant, and making bloodthirsty threats as to his intentions towards the appellant. They testified that decedent was drunk, or appeared so to them, and that when he came near to appellant he cursed him viciously and threatened his life and then and there thrust his right hand under the bib of his overalls, apparently for the purpose of drawing a weapon, when the appellant shot him and killed him.

There was evidence of ill feeling that had existed between appellant and decedent for some time prior to the killing, and there was some evidence of threats made by decedent concerning appellant. The whole matter took place within the family circle. Martha Hammons is a sister to appellant and she married the father of the decedent, and was, therefore his stepmother. Appellant had married the stepdaughter of his mother, who was the sister of the decedent. The three daughters of Martha Hammons who testified for appellant were his nieces, and they were half-sisters of the decedent. The jury, fully understanding these relationships, chose to accept as true the testimony of the two sons of decedent rather than that of his stepmother and his three half-sisters. This was within the province of the jury as it alone was the sole judge of the credibility of the witnesses.

The error urged strongest by appellant is that the clothing worn by the decedent at the time he was killed was admitted in evidence without proof that it was in the same condition as at the time of the killing. He relies on the case of Webster v. Com., 223 Ky. 369, 3 S. W. (2d) 754, and McCandless v. Com., 170 Ky. 301, 185 S. W. 1100. An examination of the evidence discloses that the

clothing was exhibited to a witness and the witness was asked whether it was the same clothing worn by the decedent at the time of his death, and the witness identified is as such. There is nothing in the record showing that the clothing was ever exhibited to the jury. It was simply put in evidence. One witness was asked about the blood on the clothing, and an objection was made to the question which was sustained by the court. There was no controversy about who shot the decedent. The appellant admitted that he did so. The commonwealth did not attempt to establish any fact by the introduction of the clothing. If it was error to admit the clothing in evidence without proof that it was in the same condition as at the time of the killing, it was harmless. The facts in the two cases cited differentiate them from this case. This is the only error argued in the brief for appellant which might be available to him, other than his contention that the punishment is excessive, and that it was induced through prejudice and passion, and we have disposed of that contention adversely to him. The instructions were objected to by appellant, but he does not attempt to point out any error in them, and we have observed none.

Judgment affirmed.