## Voils et al. v. Commonwealth.

(Decided April 16, 1929.)

306

C. C. BAGBY, CHARLES FAIR and O. B. BERTRAM for appel-lants.

J. W. CAMMACK, Attorney General, and JAS. M. GILBERT, As-sistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—Affirming.

The appellants, Theodore Voils and Ransom Bryant, have been found guilty of manslaughter, and sentenced to serve five years in the penitentiary. They were charged with the murder of Cash Smith. At the time Voils conducted a garage in Liberty, but Bryant does not appear to have had any regular business or occupation.

One of the grounds relied on to reverse the judgment is that the trial court should have given defendants a peremptory instruction because of insufficient evidence. This ground is not pressed, however, except as to Bryant; it being maintained that he was charged in the indictment as an aider and abettor, and that the evidence does not prove the death of Smith was due to the act of violence which the commonwealth showed Bryant committed on the deceased, nor that he aided his codefendant to kill him, and consequently there was a variance between allegation and proof. It is also contended that he had left the scene of the crime at the time the testimony showed Voils shot Smith.

The evidence is that on the evening before Smith was killed he obtained from Voils, without charge, an automobile having no top, which is referred to in the record as a "skeeter." That night he and Bryant went into the country some distance to secure a quantity of moonshine whisky. The bootlegger failed to keep his appointment with them at midnight, and they were compelled to wait until 2 o'clock in the morning before getting the liquor. On the return trip, when they reached a ford in Green river not far from Liberty, according to the testimony of Bryant, they hid the whisky under a bridge, and he took the "skeeter" car into Liberty for the purpose of exchanging it for one having a top in order that they might conceal the whisky during the remainder of the journey. Smith stayed at the river to guard the whisky. Bryant further testified that, when he returned in another car having a top and curtains (which also belonged to Voils), he found Smith had been killed, and that he then hurried to the home of Charles Montgomery, not far away, and telephoned Voils, and asked him to notify the sheriff. Voils did so, and brought the officer at once to the scene. Along the way Bryant got on the car and accompanied them. Smith's body,

with bruises on his head and a bullet hole just above the heart, was found in a roadway close to the river. A club was within a few feet of the body. The sheriff observed Voils stooping with a pistol in his hand, and the latter remarked, ''Here is his pistol,'' and took it over and put it under a rug in his automobile without showing it to the officer. He later stated that it was his own pistol, which he had loaned Smith the night before. Voils' defense was an alibi, and he denied ever saying that the pistol found was Smith's.

The commonwealth introduced Matthew McFarland, who testified that he had been fishing the night before with Voils and two others until about midnight; that he went to Liberty between 5 and 6 o'clock in the morning, returned to the river, and came up to the ford in a skiff about 7 o'clock, looking for a place to fish the next night. He heard some talking up on the road, and went to see who it was. He there saw and heard the deceased, Voils, and Bryant quarreling over a half gallon of whisky. Voils and Smith were fighting with their fists, and Smith knocked Voils back on his hands; Bryant then struck Smith in the head with a club, knocking him to the ground, and ran. As Smith got up, Voils put his hand to his hip pocket, and the witness turned to leave. He immediately heard a shot fired, and then saw Bryant run across the river; the water being very shallow at that place. The presence of Bryant and some other man (although not positively identified as Voils) near the scene of the crime just after the shot was heard is proved by several witnesses. There are a number of other circumstances tending to prove the guilt of both defendants, the details of which evidence need not be given. It is readily apparent there was ample evidence to carry the case to the jury and to sustain the verdict. It is the duty of the court to give to the evidence the construction most favorable to the commonwealth, and, when that is done, if it tends to prove the guilt of the defendant, the case should be submitted to the jury. Combs v. Commonwealth, 224 Ky. 653, 6 S. W. (2d) 1082; Kirk v. Commonwealth, 192 Ky. 460, 233 S. W. 1060.

But it is claimed by counsel that the flight of Bryant immediately before the shooting relieved him of responsibility. In support of that theory counsel rely upon Warren v. Commonwealth, 222 Ky. 460, 1 S. W. (2d) 774. The facts in that case are materially different from these.

It there appeared that, although Warren engaged in a general fight when it began at his automobile, he did not participate in the combat pursued on a sidewalk near by in which a man was killed. He used no deadly weapon, and there was nothing to show any intention on his part to bring about the killing or that he knew that any of the others participating in the fight had any such intention. While we expressed grave doubt as to the sufficiency of the evidence to uphold the verdict, the judgment was reversed for error in instructions. The evidence here tends to prove that Bryant and Voils returned to the river together, and that they were acting in concert during the fight. Bryant waited to leave until it was too late to save himself from the consequences.

The demurrer to the indictment was properly overruled. The defendants were jointly accused of the crime of murder, and both are charged with having killed Smith "unlawfully, willfully, maliciously, feloniously and with malice aforethought," by Voils beating, striking and wounding him with his fists and shooting him, and by Bryant aiding and abetting him "so to do" by beating the deceased with a club, from which "said striking, beating, wounding and shooting the said Cash Smith then and there died." It is contended that the indictment does not charge the aiding and abetting by Bryant was done unlawfully or feloniously. There is no merit in this contention, for the phrase "so to do" relates back to the manner in which both defendants are charged with committing the offense.

A similar objection is made to the instructions, particularly the one covering manslaughter, under which the defendants were found guilty. That instruction is as follows:

"If you believe from the evidence beyond a reasonable doubt that Theo Voils, defendant, in said county and before the finding of said indictment, willfully in sudden affray or in sudden heat and passion not in his necessary self-defense nor in necessary defense of Ransom Bryant and without previous malice shot and killed Cash Smith you will find defendant, Voils, guilty of voluntary manslaughter and should you further believe from the evidence beyond a reasonable doubt that defendant, Ransom Bryant, in said county without previous malice and

not in his own necessary self-defense or the defense of defendant, Theo Voils, was then and there present, aiding, abetting, advising or assisting the defendant, Voils, to do said shooting and killing, you will also find Ransom Bryant guilty of voluntary manslaughter.''

This instruction is criticized because it did not require the jury to believe that Voils feloniously killed Smith, or that Bryant feloniously, willfully, or unlawfully aided and abetted him in so doing. Such qualifications are usually incorporated in the instructions and it is perhaps well that they should be. But the jury was required to believe that Voils willfully killed Smith, and that Bryant aided and abetted him ''to do said shooting and killing.'' As was observed in Lissenbee v. Commonwealth, 198 Ky. 639, 249 S. W. 782, the words ''unlawfully and feloniously'' clearly import a willful act. So an act declared by law to be felonious when willfully done is, of course, an unlawful act. In Whitaker v. Commonwealth, 188 Ky. 95, 221 S. W. 215, 10 A. L. R. 145, it was held that an instruction was correct, although it did not contain the word ''unlawfully.'' In Frazier v. Commonwealth, 194 Ky. 240, 238 S. W. 769, it was held that, where the instructions embrace a correct exposition of the law applicable to the facts proved, the omission of the word ''feloniously'' was not error. And in Urban v. Commonwealth, 196 Ky. 770, 245 S. W. 511, it was held unnecessary to include in the instructions either the words ''maliciously'' or ''willfully.'' Other authorities might be cited, but these are sufficient to indicate that there was no prejudicial error in the instructions in this respect.

The instruction is further criticized because the jury was permitted to convict the defendants, if the acts were not done in their ''necessary'' self-defense; the element of apparent necessity being omitted. There would be force in this contention were it not for the fact than another instruction provided that the jury should acquit the defendants or either of them ''on the ground of self-defense and apparent necessity,'' if they committed the acts because ''it was necessary or seemed to'' the respective defendants ''in the exercise of a reasonable judgment to be necessary to shoot and kill said Smith solely to avoid or avert said danger, either real or apparent.'' Similar

criticisms have often been presented to the court and they have been uniformly held unavailable.

In Cupp v. Commonwealth, 208 Ky. 231, 270 S. W. 774, such complaint was thus presented and answered:

"He complains of instructions 1 and 3 because the court failed in them to use these or similar words: 'Not in the necessary or apparently necessary defense of himself or another,' but this court has held this to be unnecessary, and that when murder is correctly defined, manslaughter correctly defined, self-defense correctly defined, and reasonable doubt correctly submitted, these instructions, when read together, are the law of the case, and self-defense need not be negatived in the murder and manslaughter instruction. See Catron v. Com., 140 Ky. 61, 130 S. W. 951; Hoskins v. Com., 152 Ky. 805, 154 S. W. 919; Miller v. Com., 163 Ky. 246, 173 S. W. 761; Holcomb v. Com., 207 Ky. 372, 269 S. W. 349."

The jury is given the law of the case in the instructions as a whole, and they understand that they must be read and considered together. Dennison v. Commonwealth, 198 Ky. 374, 248 S. W. 878; Hopkins v. Commonwealth, 210 Ky. 378, 275 S. W. 881.

One of the grounds offered in support of the defendants' motion for a new trial is that, during a recess of the court, the jury, being kept together in the custody of the sheriff, walked down to the river at the ford mentioned in the evidence, and one of them suggested that it must be the place that had been referred to. One of the jurors threw a rock in the water, which the defendant construes as having been done to ascertain its depth, there being some question as to whether an automobile could have crossed there. On another occasion the jury went to a bridge that was mentioned in the evidence.

The case of Freeman v. Commonwealth, 226 Ky. 850, 10 S. W. (2d) 827, was reversed because the jury viewed the premises without the presence of the defendant; it being held that such a view was receiving evidence in his absence. The cases supporting that construction of the law are collated in the opinion.

But the defendants cannot avail themselves of this error, because there is an entire absence from the bill of exceptions of any reference to it, and this court has no authority to consider the matter. See Tull v. Common-

wealth, 187 Ky. 413, 219 S. W. 409, in which other authorities are cited and quoted. Appellants' counsel concede this rule, but claim that the evidence of the sheriff relating to the matter and the defendants' affidavits that they knew nothing of the misconduct until after the verdict had been rendered were made a part of the record by an order, and, when that was done, it was not necessary to incorporate those facts in the bill of exceptions. The order merely filed the motion and grounds for a new trial and the evidence and affidavit as a part thereof. As in the Tull case, the record before this court consists only of the statements of the witnesses and the defendants filed in support of the motion. There is no certification of those facts according to the method provided by law. A motion for a new trial and the grounds filed in support thereof are for the consideration of the trial court. The record as contained in the orders of the court and in the bill of exceptions certified by the trial judge is for the appellate court. Perkins v. Commonwealth, 227 Ky. 129, 12 S. W. (2d) 297. When any ground, although filed in support of a motion for a new trial, is omitted from the record submitted to this court, it cannot be considered. See Thomas v. Commonwealth, 200 Ky. 591, 255 S. W. 276; and Bruner v. Commonwealth, 225 Ky. 713, 9 S. W. (2d) 1080, where the records were similar to the one now before us.

Other alleged errors concerning the conduct of counsel have been considered, and are without merit. The statement of one of the attorneys assisting in the prosecution that Smith was killed by his copartner in the liquor business was fully sustained by the evidence, and hence the court properly overruled an objection to it.

The defendants have had a fair trial, and, in our judgment, the jury dealt leniently with them.

The judgment is affirmed.