### Carson v. Commonwealth.

(Decided June 21, 1912.)

## Appeal from Casey Circuit Court.

1. Homicide—Omission of Word "Feloniously" from Instructions.— This court has not held that it is error to omit the word "feloniously" from an instruction upon the charge of murder, but on the contrary has frequently held that the omission of the word from an instruction is not error.

2. Argument of Counsel.—The statement of the Commonwealth's Attorney that "the law is that words and language do not justify an assault," was not prejudicial to appellant, and in adopting the line of argument to which objection is made, the Commonwealth's Attorney was acting within his rights.

J. W. RAWLINGS, ROBERT HARDING and GEO. E. STONE for appellant.

JAMES GARNETT, Attorney General, M. M. LOGAN, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Walter Carson was indicted for the murder of Ed. Cochran. Upon his trial, he was found guilty and his

punishment fixed at confinement in the penitentiary for life. He appeals, and seeks a reversal primarily upon two grounds: First, that the court erred in instructing the jury; and second, that the Commonwealth's attorney, in his closing argument, was guilty of such misconduct as entitled him to a new trial.

The facts as developed by the evidence are as follows: On the 21st of June, 1911, while Ed Cochran was engaged in inspecting ties near a store house, belonging to one Wheat in Casey county, he was shot by appellant and died from the effects thereof two days thereafter. Appellant was a mail carrier and had a registered letter for Cochran. He walked up to where Cochran was, delivered the registered letter to him and took his receipt therefor. No words passed between them, as they were not on speaking terms. Having received his receipt, appellant turned as though to leave, walked some two or three steps and paused. Then, according to the testimony of all the witnesses present, he said, addressing himself to Cochran, "Do you have any apologies to make to me to-day?" to which Cochran replied, "None whatever." Appellant then pulled his revolver from his hip pocket and said, "If you don't take it back, I will kill you." One of those present said, "Don't shoot, hold on, I will have him take it back," and some one requested Cochran to comply with appellant's request, but Cochran said that he would not take it back, and appellant then raised his pistol and shot. This shot evidently took effect, passing through his arm and his body. Cochran then walked around a wagon which was standing there, and appellant walked around the wagon in the opposite direction and fired a second shot at Cochran. Just before he did so, one or more of the parties present requested him not to shoot, and told him that Cochran had taken it back, or would take it back. After the second shot was fired Cochran fell, and, according to some of the witnesses for the Commonwealth, appellant pointed his pistol at him and told him if he did not take it back, he would kill him. Cochran made some reply to the effect that it was too late, or, according to one witness, that appellant had killed him, whereupon appellant requested him to get up and offered to shake hands with him. This, Cochran refused to do. Appellant makes practically the same statements concerning the manner in which the shooting occurred, except that he says, at the time he fired the first shot, and the second shot as well, he

thought Cochran was attempting to draw a revolver from his pocket, and that he shot in order to protect himself. He also denied that he said that if Cochran did not take it back, he would shoot him or kill him. He introduced some evidence tending to corroborate him as to the position in which Cochran was standing and the peculiar motion of his left hand or arm and body, just as appellant shot him the first time. He also introduced evidence to the effect that Cochran had threatened to kill him or do him bodily harm, on different occasions, and some evidence to the effect that Cochran's reputation for peace and quiet in the neighborhood was bad. He testified that about a year before this difficulty, he and Cochran had a dispute and falling out over fifty cents, which Cochran alleged he had given to appellant and appellant denied having received, that this difference resulted in an estrangement, and for sometime prior to the date of the difficulty, they had not been on speaking terms, though they had one or two quarrels relative to this fifty cent transaction, the last of which occurred some four or five days prior to the day upon which the tragedy occurred. In this last difficulty, appellant testified, that Cochran called him a G—d d—n s—n of a b—h, that he then told Cochran he would have to take it back, and it was this epithet that he was demanding of Cochran that he take back or apologize for, at the time the shooting occurred. The Commonwealth proved that at the time of the shooting, Cochran was in his shirt sleeves, and when appellant came into town with his mail on that day, he likewise was in his shirt sleeves, his coat was in his buggy and his pistol was in his coat. He first distributed the mail to the boxes in the town, delivered some to the stores, then put on his coat, transferred his pistol to his hip pocket and then went down and delivered the registered letter to Cochran, when the killing occurred as detailed. The Commonwealth proved that the reputation of Cochran for peace and quiet was good.

The decided weight of the evidence is to the effect that appellant was altogether the aggressor, and that there was nothing in either Cochran's manner or movements that would indicate in the slighest that he was attempting to offer any violence or injury whatever to appellant. From this evidence the jury was warranted in finding that the shooting was the result of a hatred and grudge entertained by appellant against Cochran,

because of the vile name which he had called him and had declined, upon request, to withdraw or take back.

There is some complaint that the court erred in the admission of evidence, but upon careful reading of the record we fail to find wherein any competent evidence, offered by appellant, was rejected. Indeed, counsel, in his brief does not seriously complain of any ruling by the court in the rejection or admission of evidence. As stated, his most serious complaint is of the instructions, and particularly because the court did not, in the instructions given, require the jury to believe that the killing was "feloniously" done. Reliance is had upon the case of Kaelin v. Commonwealth, 84 Ky., 354, as supporting this position. An examination of that case, however, discloses the fact that the contention of counsel for appellant in this particular is incorrect, for the court, in that case, merely held that it was a fatal error to fail to charge in the indictment that the killing was "feloniously" done. No question of the omission of this word from the instruction was considered or passed upon; and hence, the Kaelin case is not in point. This court has not held that it is error to omit the word "feloniously" from an instruction upon the charge of murder, but, on the contrary, has so frequently held that the omission of the word from an instruction is not error, that it can no longer be regarded as an open question.

In Brooks v. Commonwealth, 16 Rep., 356, an instruction identical with that under consideration was before the court, the word "feloniously" being omitted therefrom. It was held that the failure of the court to incorporate this word in the instruction did not constitute a reversible error. In disposing of the question in that case, this court said:

"It does not follow, necessarily, from the omission of this word from the instruction complained of, that the error was prejudicial to the accused. If he killed the deceased in the manner shown by the State, it was a most foul murder. The proof established that the accused was stationed within the door of his house, with the muzzle only of his gun protruding, awaiting the expected coming of the deceased and his father; that when they, unsuspicious of danger and heavily encumbered, with a load of timber on their shoulders, came near, he shot first at the father and then at the son, killing the latter almost instantly.

"The accused testified to a state of case tending to show that he acted in self defense. The issue was fairly put, and the conclusion of the jury rested solely on their acceptance or rejection of the plea of self defense interposed by the defendant. They rejected his story. Certainly, in a case like this, to upturn the finding because of the failure of the court to define accurately the crime of murder or designate the character of the act of killing by the most accurate nomenclature possible, would be highly technical."

Again, in the case of Omer v. Commonwealth, 95 Ky., 353, it was held not to be a reversible error to omit the word "feloniously" in an instruction in a murder trial. In the still later case of Stout v. Commonwealth, 123 Ky., 184, this court, after reviewing all the authorities bearing upon this question, held that the omission of the word "feloniously" from a murder instruction was not a reversible error, and that, under the decisions of this court, this was no longer an open question. In disposing of the matter the court said:

"With reference to the necessity for the use of the word 'felouiously' there is a vast difference between an indictment and an instruction. The object of an indictment is to inform the accused of the offense with which he stands charged, in order that he may intelligently prepare such defense as he has to meet the accusation of the Commonwealth. It is therefore highly proper and necessary that all of the technical words which are requisite to describe the offense with which the appellant is charged should be used affirmatively, in order that he may not be put to the hazard, or expense, of a trial for his life or his liberty upon an accusation embodying only the legal conclusion of the grand jury; and for this reason it has been properly established that every word essential to a description of the common law offenses of murder and manslaughter should be used in an indictment seeking to charge the defendant with the commission of those crimes. Not so with regard to instructions. The object of these is to enlighten the minds of the jury with reference to the principles of law arising from the evdence which has just been detailed to them, so that they may intelligently arrive at a verdict in accordance with the proof. It is not, therefore, necessary to use all of the terms of art to enable the jury to intelligently apply to proper principles of law to the facts contained in the evidence. This may be illustrated as well by the

.case in hand as in any other way. There were but two theories in this case: That of the Commonwealth was that the deceased was assassinated in cold blood; that of the defense, that the accused killed the deceased in self-defense. The actual killing was not controverted. Now, the jury having heard all the evidence with reference to these two theories, were required to shape their verdict in accordance with the very truth of the matter. It was conceded, for all practical purposes, that if the killing was not in self-defense, then it was assassination; if it was done in self-defense, the accused was guiltless. Now, the court (so far as this branch of the case is concerned), in apt terms described what constituted the legal right of self-defense on the part of the accused, and, therefore, taking the instructions as a whole, it cannot be said that the substantial rights of the defendant were prejudiced, or could have been prejudiced by the omission of the word 'feloniously.' "

Again, in Peace v. Commonwealth, 146 Ky., 754, a murder instruction in which the word "feloniously" was omitted was expressly approved.

The instructions, as given, are models of brevity, simplicity and accuracy, and are not subject to the criticism imposed upon them by counsel for appellant. The language of the court in the opinion in Stout v. Commonwealth, supra, applies with marked force to the facts of this case. Appellant admitted shooting deceased, but claimed that it was done in self-defense. If it was not self-defense, it was cold-blooded, premeditated, deliberate murder. Hence, the word "feloniously" had no place in the instructions, and if it were now a new question, we would, under the facts of this case, be unwilling to say that its omission could be regarded as affording a ground for reversing the judgment.

Lastly, it is complained that the Commonwealth's Attorney was guilty of misconduct in addressing the jury, The language objected to is:

"I tell you gentlemen of the jury, in the presence of the court, and in the presence of the gentlemen of the other side, that the law is, that words and language do not justify an assault.'

We are unable to understand wherein this statement by the Commonwealth's Attorney was in any wise prejudicial. It was certainly true. There was nothing in the instructions of the court in conflict with the statement. Appellant himself did not claim that he shot be-

cause of any word spoken to him by his victim, but, on the contrary, his sole defense was that he shot because he believed he was in danger.. We are of opinion that, in adopting the line of argument to which objection is made, counsel for the Commonwealth was acting fairly within his rights.

We fail to find wherein any error was committed during the progress of the trial, to the prejudice of appellant in the slightest degree. He was well and ably represented, and his conviction was due to the simple fact that the overwhelming weight of the evidence was to the effect that, without justification or excuse, he shot and killed his defenseless victim, at a time when his friends were begging and pleading with him not to do so.

Judgment affirmed.