## Reynolds v. Commonwealth.

(Decided February 25, 1919.)

## Appeal from McCreary Circuit Court.

1. Homicide—Self-Defense—Instructions.—An instruction on the law of self-defense so worded as that it must have given, or was reasonably liable to give, the jury to understand, that in order to acquit the accused on that ground, they were required to believe from the evidence beyond a reasonable doubt the facts it was stated would excuse the homicide; and which, in addition, confined the exercise of the right of self-defense by the accused to the mere shooting and wounding of the deceased, was so prejudicial to the substantial rights of the accused as to compel the reversal of the judgment of conviction.

2. Homicide—Self Defense—Instructions.—The instruction should have advised the jury that their belief from the evidence of the predicated facts constituting self-defense on the part of the accused, would justify a finding from them that the killing of the deceased was excusable; as in such state of case, the shooting by the accused was justifiable whether it resulted in the mere wounding of the deceased or in his death. A form of instruction which will correctly advise the jury as to the law of self-defense, on a retrial of the case, will be found in the opinion.

HENRY C. GILLIS and I. N. STEELY for appellant.

CHARLES H. MORRIS, Attorney General, and D. M. HOWERTON, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellant, William Reynolds, was tried in the court below under an indictment charging him with the crime of murder, the person killed being Fount Edwards. The jury, by their verdict, found appellant

guilty of voluntary manslaughter and fixed his punishment at confinement in the penitentiary five years. He was refused a new trial and has appealed. Appellant is a "mine boss," twenty-nine years of age, and in addition to a wife and two children, he had living with him a sister and brother, both in his care; the sister, Minnie, being eighteen and the brother, Herbert, sixteen years of age.

On the night of the homicide appellant, his wife, sister and brother went to a nearby church and on the way were joined by Fount Edwards, who walked in front with the two ladies, appellant and his brother following in the rear. Upon reaching the church Edwards sat with the choir and assisted in the singing. During the service appellant told his wife to tell his sister not to permit Edwards to return home with her. The sister was so advised and when the services closed declined to be escorted to her home by Edwards, telling him of appellant's request. Edwards had been visiting the sister several months and there had been no ill will between Edwards and appellant; but the latter's brother, Herbert, disliked Edwards and seemed to object to his attentions to his sister, Minnie, and it was for these reasons and the fact that Herbert, at the time, was under the influence of intoxicants, that appellant advised his sister to refuse Edwards' company in returning home, as he feared Herbert would get into a difficulty with Edwards. Upon leaving the church appellant, his wife, sister and brother walked together toward their residence, but shortly after starting were passed by Edwards, who stopped, after doing so, in a store, where he remained until the store was passed by appellant and his family; whereupon Edwards left the store and, with his brother, Fogg Edwards, the latter's wife and one or two persons, followed and soon overtook appellant and upon reaching him, laid his left hand on his shoulder and jerked him around facing him with such force as to cause his hat to fall off. Edwards, holding in his right hand a pistol, elevated on a line with appellant's face, said to him: "Why have you treated me so?" and commanded him to take his hands from his pockets. At this juncture appellant, fearing, as he claimed, immediate death at the hands of Edwards, drew his pistol and shot at Edwards five times, three of the shots striking him and causing his death.

There is little contrariety of evidence as to the facts so far stated. Some of the witnesses present claimed that they did not see the jerking of appellant by Edwards or the pistol in the latter's hands, but a majority of them did, and all said they heard his statements to Edwards as above related; some saying his manner was violent and others that it was not. While there was much in this evidence to give a basis for appellant's claim of having shot Edwards in self-defense, it was not so conclusive of that fact as to authorize a directed verdict of acquittal; hence we do not agree with appellant that this should have been done. There being on some points a conflict of evidence as to the facts of the killing, this was sufficient to take the case to the jury that they might determine appellant's guilt or innocence.

Consideration of the numerous grounds urged by the appellant for the reversal of the judgment of conviction, has enabled us to find but one among them we think sufficient to entitle him to the relief sought by the appeal, viz.: the error complained of as appearing in the instruction, given the jury by the trial court, explanatory of the law of self-defense. The instruction, numbered "4" in the bill of exceptions, is as follows:

"Although you may believe from the evidence, beyond a reasonable doubt, that the defendant, Wm. Reynolds, shot with pistol loaded with powder, leaden ball and other hard and explosive substances, the deceased, Fount Edwards, and from which shooting and wounding he then and there presently died, yet if at the time he did so he, the said Reynolds, believed and had reasonable grounds to believe, that he was then and there in danger of death or the infliction of some great bodily harm at the hands of said Edwards and that it was necessary, or was believed by the defendant, in the exercise of a reasonable judgment, to be necessary, to so shoot and wound the deceased in order to avert that danger, real or to the defendant reasonably apparent, then you ought to acquit the defendant upon the ground of self-defense and apparent necessity therefor."

There are two errors in this instruction, and if it could reasonably be claimed that neither of them singly would have made the instruction prejudicial, it is manifest that together they so fatally affected its meaning as to make it extremely prejudicial; so much so indeed,

as to furnish reasonable grounds for the claim advanced by the appellant that it impaired his right to a fair trial. The first error in the instruction is found in its apparent requirement that, in order to acquit the appellant on the ground of self-defense, the jury must have believed from the evidence, beyond a reasonable doubt, the truth of the facts upon which the instruction predicated his right to shoot the deceased; whereas the law only required that the jury believe from the evidence the truth of those facts. The instruction, as did others in the case, correctly told the jury that the killing of deceased by appellant had to be proved by the evidence beyond a reasonable doubt, but its failure to advise them that in order to acquit him on the ground of self-defense it was only necessary that they believe from the evidence the facts upon which it predicated his right to act in self-defense, was an inducement to the jury to infer that they could not acquit appellant on that ground, unless and until the facts authorizing his exercise of the right of self-defense had been proven by the evidence beyond a reasonable doubt. If it is not the meaning of the instruction that appellant's claim of self-defense must be established by the evidence beyond a reasonable doubt, then it wholly failed to advise the jury how they were to determine the existence or non-existence of the fact; whether from the evidence beyond a reasonable doubt, from the preponderance of the evidence or from the evidence at all. The best that can be said of the instruction is that it can be construed so as not to carry the requirement of belief beyond a reasonable doubt to the facts necessary to establish the defense relied on. A lawyer or judge, familiar with the law, might so understand and construe it, but the average jury can not be expected to be so discriminating. Being unfamiliar with the law it may well be doubted that they would be able to determine where the requirement as to reasonable doubt ceased to apply. But suppose the jury actually discovered that it only applied down as far as the word "yet," how were they to know by what to be governed from there on? At best they were left to conjecture. They may or may not have guessed right, but the possibility is just as great, if not greater, that the jury did not construe the instruction correctly as that they did; and manifestly a man who is being tried for his life or liberty, has a right to an instruction on his sole defense

which is not susceptible of misconstruction and which does not require the jury, ir order to be right, to speculate as to whether they think the instruction requires them to believe the defense beyond a reasonable doubt from the evidence, or to believe it from the evidence which preponderates, or whether they must arrive at their verdict from the evidence at all.

We have frequently held that it is error of a reversible character for an instruction to require a jury to believe from the evidence beyond a reasonable doubt the facts necessary to authorize an acquittal on the ground of self-defense. Among the more recent cases so holding are Toliver v. Comlth., 161 Ky. 81; Biggs v. Comlth., 159 Ky. 836. We are aware that in Mullins v. Comlth., 32 R. 1268, the opinion not reported, we refused to reverse the judgment of conviction on account of an instruction containing the same error we are here considering; the opinion, however, condemned the instruction because of the error, but affirmed the judgment on the ground that as there was no evidence to support his plea of self-defense, the appellant was prejudiced in no substantial right by the giving of the erroneous instruction. In the instant case there was, as we have seen, much evidence to support the appellant's defense of a justifiable killing. It is apparent therefore that the difference in the facts differentiates the instant case from that of Mullins v. Comlth., *supra*.

The second error in instruction "4" lies in its limiting the appellant's exercise of the right of self-defense to the shooting and wounding of the deceased; whereas, it was his right to kill him, if the facts predicated in the instruction were believed by the jury, from the evidence, to exist. In other words, the instruction, in effect, told the jury that appellant, in the exercise of the right of self-defense, was authorized to shoot and wound, but not to kill the deceased. An instruction containing the same error was condemned in Barker v. Comlth., 159 Ky. 309, with respect to which it is in the opinion said:

"Furthermore, upon another trial, the fifth instruction, instead of permitting Barker to shoot and wound Eason under the facts therein predicated, should follow the usual language of such instruction which permits the defendant to shoot and kill his opponent under the circumstances predicated in the instruction."

On another trial the circuit court, in lieu of instruction "4" in its present form, will give the following instruction, numbered as the other:

"Although you may believe from the evidence beyond a reasonable doubt that the defendant, Wm. Reynolds, shot with a pistol, loaded with powder, leaden balls, or other hard and explosive substances, the deceased, Fount Edwards, from which shooting the said Edwards did then and there presently die, yet if you further believe from the evidence that at the time he did so shoot and kill said Edwards, he, the defendant Reynolds, believed and had reasonable grounds to believe that he was then and there in imminent danger of death or the infliction of some great bodily harm at the hands of the said Edwards, and that it was necessary, or was believed by the defendant Reynolds, in the exercise of a reasonable judgment, to be necessary, to shoot and wound or kill the said Edwards to avert that danger, real or to the defendant reasonably apparent, then you ought to acquit him on the ground of self-defense or apparent necessity therefor."

Our examination of the remaining instructions convinces us that they correctly gave the law in its several features intended to be covered by them, respectively.

We have also considered the appellant's complaint respecting the admission and exclusion of certain evidence, but in our opinion it possesses little merit. There were a few errors of the character complained of, but none of them of such a nature as to prejudice the substantial rights of the appellant.

The same is true of other complaints made of certain rulings of the court during the trial; we find none of these rulings prejudicial. But because of the errors contained in the instruction respecting the law of self-defense, we are not satisfied that appellant had a fair trial in the court below; hence the judgment of conviction is reversed and cause remanded for a new trial and such other proceedings as may not be inconsistent with the opinion.