## Frazier v. Commonwealth.

(Decided March 17, 1922.)

### Appeal from Letcher Circuit Court.

1. Criminal Law—New Trial.—On the motion for a new trial it was charged that one of the jurors had expressed an opinion as to the guilt of the accused before the trial, which charge was supported by the affidavit of the person to whom the juror was alleged to

have expressed such opinion. The accused juror denied the charge. Held, it was not an abuse of judicial discretion for the trial court to deny the motion on that ground.

2. Criminal Law—Appeal and Error—Evidence.—On the evidence in this case it cannot be held, as contended by appellant, that the verdict is not sustained by sufficient evidence. There was ample evidence introduced by the Commonwealth to support the conviction.

3. Criminal Law—Evidence.—It was not prejudicial error to permit the Commonwealth to introduce a witness to testify to a conversation between the accused and his brother, contradicting the testimony of the brother introduced by the Commonwealth, since the objectionable testimony was incidental to the recital of statements made by accused immediately after the killing, and, aside from that fact, did not reflect on his guilt and could not have adversely affected his rights before the jury.

4. Criminal Law—Evidence.—Evidence relating to previous difficulties between the accused and the deceased as tending to show motive and ill feeling is competent, but the details of such difficulties are not admissible and it is not error to exclude them from the jury.

5. Criminal Law—Absent Witnesses—Affidavits.—The refusal to permit accused to read to the jury an affidavit, as the testimony of absent witnesses, was not prejudicial under the facts in this case since the testimony of such witnesses related merely to the state of feeling between the accused and the deceased which was otherwise conclusively established.

6. Criminal Law—Instructions.—The omission of the word "feloniously" from instructions which correctly stated the law applicable to the proven facts was not prejudicial error.

R. MONROE FIELDS, D. D. FIELDS & DAY and DAVID HAYS for appellant.

CHAS. I. DAWSON, Attorney General, and THOMAS B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

Appellant, Jonathan Frazier, shot and killed his brother, Henry Frazier, in Letcher county on October 9, 1920. On the trial of the indictment for murder, appellant was convicted of manslaughter and his punishment fixed at confinement in the state penitentiary for ten years.

The motion for a new trial having been overruled, various grounds are assigned for a reversal of the judgment, the first of which is that one of the jurors expressed an opinion before the trial as to the guilt of the accused.

The alleged ineligible juror was J. H. Maggard, who is charged with having said previously to the trial that, "the accused did not have to kill the deceased, Henry Frazier, and that if it had been him (Maggard) he would have found a way to have gotten out of killing his brother, but that the rest of them (referring to the brothers and relatives of accused) would figure that Henry Frazier was dead and gone and that all they could do would not bring him back and that they would swear enough to clear the defendant." It is averred that Maggard made the statement indicated to John Amos, whose affidavit was filed in support of the motion for a new trial. The Commonwealth filed the affidavit of Maggard in which he denied that he made any part of the statement and asserted that the whole of it as alleged in Amos' affidavit was false. Nothing else appearing to support the alleged incompetency of Maggard the circuit court held that he was not disqualified. In our opinion the ruling of the court in this respect was proper on the authority of Baker v. Commonwealth, 192 Ky. 478.

It is earnestly argued that the verdict of the jury is not sustained by the evidence. This insistence proceeds on the theory that it is conclusively shown that appellant shot and killed his brother in self defense, and, further, that there is no evidence in contradiction of the defense thus established. The deceased was thirty-nine years of age and appellant twenty-eight. For several months they had not been on friendly terms. Their animosities arose seemingly over a contest for the location of a school house, each of them desiring to secure the location near his residence. Appellant was successful in securing the location and after the breach several altercations occurred between them, in one of which appellant was harshly abused by the deceased, and in another he drew a pistol on deceased.

On the night of the killing they were both at the store of their brother, Lee Frazier, where appellant was assisting in attending the customers who came into the store. He was a deputy sheriff and had in his possession a pistol which was seen by several persons in the store. The deceased came to the store wearing overalls without a coat. The proof shows that he did not have a weapon of any kind. After all the customers had departed appellant procured some whiskey and he with Lee Frazier and another brother, Sol Frazier, and Victor Adams and the deceased had two or three drinks from the bottle of

whiskey. Appellant and the deceased were not on speaking terms, but they were friendly enough to enjoy the jokes that were being told and to talk in a general way to the other members of the group. Appellant testified, and he was corroborated by Lee Frazier and another witness, that while they were drinking from the bottle he suggested to the deceased that they become friends; that the deceased made no reply to the suggestion and threw his right hand back to his hip, having a glass of liquor in his left hand, but within a few seconds drank the whiskey. Appellant said that he then left the store and crossed the street to his residence, which was about seventy-five yards from the store, after having invited some of the party to spend the night with him. Shortly after he left the store there were twelve or fifteen shots fired from the yard of appellant's residence. Lee Frazier was then closing the store and he and the deceased were preparing to leave for their homes. Lee Frazier said that nothing was said by the deceased about the shots until the store was closed and they had gone outside and were bridling their mules preparatory to riding home; that the deceased then began abusing and cursing appellant and threatened to kill him and invited him outside; that he then heard appellant say, "Here I am," and deceased, who was astride his mule with a lighted lantern hanging on his left arm and the bridle reins in his right hand, turned his mule and started towards the gate of appellant's yard, still threatening to kill him. The witness proceeded towards home, telling his brothers that he would have nothing to do with the affair, and immediately he heard a shot and the deceased came back, alighted from the mule and in response to repeated questions gasped that he was dying. He died within a few minutes from the effect of a bullet wound inflicted by appellant.

Appellant testified that on leaving the store, he proceeded towards his home and discovered several dogs in his yard and he shot at them, emptying his pistol; that he went into the house, put his lantern down, reloaded his pistol, went back to the corn crib and there saw another dog, which he thought belonged to one of his neighbors, and he shot at that dog until his pistol was empty; that he reloaded his pistol, came down to a box near his gate and then heard his brother cursing and threatening him and in response to the threats and curses and the invitation to come out and fight said to his

brother, "Here I am;" that deceased, carrying a lighted lantern on his left arm but with his right hand to his hip pocket, advanced on appellant, who then fired; that he heard Henry say that he had been killed but did not go to him; that he started to the home of Sol Frazier whom he met and who refused to accompany him to Whitesburg. He said that after the shooting he procured another pistol and was carrying a pistol in each hand when he met Sol Frazier.

The evidence relied on by appellant is substantially as stated, and considered alone is strongly persuasive of the theory of appellant that Henry Frazier was the aggressor. However, there is other incriminating evidence in the record, as well as convincing circumstances, from which it can be inferred that the deceased was not the aggressor but that the shooting was the result of premeditation on the part of appellant. While no one but Lee Frazier observed the conduct of the parties immediately preceding the shooting there were other witnesses introduced for the Commonwealth who were near and who heard the shots and were in a position to hear the threats of deceased, if any were made. Those witnesses did not hear any threats from Henry Frazier, but one of them testified that he did hear some one say, "Damn you, I will kill you," and that it sounded like the voice of appellant. Appellant's story as to his reason for firing so many shots immediately after he left the store and his statements with reference to the places from which they were fired are effectively discredited by the testimony of two witnesses who found the empty pistol shells at the gate where the killing occurred.

The Commonwealth proved by several witnesses that there were three periods of firing and that during the last one two shots were fired; that immediately after the firing of those shots groans were heard and Lee Frazier was heard crying. This evidence and other circumstances developed by the proof are irreconcilable with the testimony of appellant and that given by Lee Frazier. The jury were fully warranted in believing that appellant was the aggressor and that the shooting was the result of a preconceived purpose on his part. On appellant's testimony alone there is justification for the verdict, when it it considered that deceased was riding at the time the shot was fired, carried a lighted lantern on his left arm which made him an easy target, and was guiding the mule with his right hand. Under this evidence it was within the

province of the jury to conclude that appellant was not acting in his real or to him apparently necessary self defense. (Black v. Commonwealth, 154 Ky. 144; Cloninger v. Commonwealth, 191 Ky. 841.) The verdict cannot, therefore, be successfully assailed on the ground that it is not sustained by the evidence.

Part of the testimony of the witness Adams is complained of. It is said to have been incompetent because contradictory of a statement made by Sol Frazier, a witness for the Commonwealth. The objectionable testimony related to a conversation between appellant and Sol Frazier when they met after the shooting. Sol Frazier was asked as to the conversation and in detailing it declined to say whether he had said to appellant, "I have been trying to keep this down for twelve months." Adams, who was with Sol Frazier at the time, testified to the conversation between Sol Frazier and appellant, corroborating Sol Frazier except as to the statement mentioned. As to that, the witness said Sol Frazier did say to appellant, "I have been trying to keep this down for twelve months." This conversation occurred immediately after the shooting. The testimony was incidental to the recital of a statement made by appellant, but had it been introduced for the purpose of contradicting Sol Frazier it would not be reversible error since it was not prejudicial to appellant. It did not reflect on his guilt; in fact it revealed nothing but the state of feeling between the brothers, which was otherwise clearly established. In no event could it have adversely affected appellant's rights before the jury.

It is also contended that prejudicial error was committed in refusing to allow appellant to detail the circumstances pertaining to previous dissensions between the deceased and himself in which the deceased was the aggressor. In one of these it was shown that appellant drew a pistol on the deceased. The trial court excluded the details of their difficulties and refused to permit the witness to answer certain questions pertaining to them. But later the facts were brought out, though not in detail, and appellant and other witnesses were permitted to say that the deceased cursed and abused appellant, causing him to draw the pistol. If it be admitted that the first rulings of the court on this point were erroneous, the errors, as we have seen, were corrected in the later examination. The details of the previous difficulties were not admissible. (White

v. Commonwealth, 125 Ky. 699; Blanton v. Commonwealth, 147 Ky. 812.)

Complaint is also made of the refusal to permit appellant to read to the jury his affidavit, as the testimony of Fred Frazier, Van Frazier and Marion Frazier, witnesses who were summoned but who were not present at the trial. The incident to which Fred Frazier would have testified as alleged in the affidavit, was otherwise introduced in evidence. Besides it was confined in its import to the state of feeling between appellant and deceased and that was definitely established. The incident to which Van Frazier would have testified was likewise limited in its effect to the state of feeling between the two, which was proved without contradiction. Marion Frazier's testimony would not have been competent if offered, since its purpose was to disprove a supposed theory of the Commonwealth never advanced in the evidence. In those circumstances we conclude that it was not prejudicial error to refuse to allow the affidavit to be read as the evidence of the absent witnesses.

The final contention is that the court erred in failing to include the word "feloniously" in the instructions and to explain its meaning to the jury. Where the instructions embrace a correct definition of the law applicable to the facts proved, as in this case, the omission of the word "feloniously" is not error. (Peace v. Commonwealth, 146 Ky. 754; Carson v. Commonwealth, 149 Ky. 294.) The instructions clearly and concisely state the law of the case. The jury found the accused guilty of manslaughter and fixed his punishment at ten years' imprisonment. After carefully considering the record and the various arguments submitted, we are unable to see wherein appellant was deprived in any respect of a fair and impartial trial.

The judgment must be affirmed and it is so ordered.