## Adams v. Commonwealth.

(Decided January 12, 1926.)

### Appeal from Letcher Circuit Court.

1. Homicide—Sufficient Facts as to Previous Difficulties Between Accused and Deceased Admissible to Show Motive.—In murder prosecution, enough of facts as to previous difficulties between accused and deceased may be introduced to show accused's motive.

2. Homicide—Erroneous Admission of Testimony Giving Full Details of Previous Encounter Not Prejudicial.—In murder prosecution, admission of testimony as to details of previous encounter between defendant and deceased, though error, held not prejudicial, in view of other testimony.

3. Homicide—Manslaughter Conviction Not Against Weight of Evidence, and 15-Year Sentence Sustained.—In prosecution for murder, held that conviction for manslaughter was not flagrantly against weight of evidence, and 15-year sentence fixed by jury could not be said to be excessive nor to reflect passion or prejudice.

4. Criminal Law—When Overruling Motion for Continuance for Absence of Witness Abuse of Discretion Stated.—Under Criminal Code of Practice, section 189, it would be abuse of discretion by trial court to overrule motion for continuance for absence of witness, unless Commonwealth's attorney consents to use of affidavit filed in support of motion as a deposition of absent witness.

5. Criminal Law—Error in Overruling Motion for Continuance for Absence of Witness Not Shown by Record.—In murder prosecution, where record did not disclose that defendant moving for continuance for absence of witnesses had offered supporting affidavit as deposition under Criminal Code of Practice, section 189, or whether Commonwealth had consented that affidavit might be so used, error will not be predicated on the overruling of the motion.

6. Homicide—Failure to Use and Define Word "Feloniously" in Instructions Defining Murder and Manslaughter Held Not Error.—Failure to use and define the word "feloniously" in instructions defining murder and manslaughter held not error.

7. Homicide—Instructions Held Not Erroneous as Limiting Accused's Right of Self-defense.—In murder prosecution, instruction on self-defense held not erroneous as limiting accused's right to merely shooting, and not to killing, in self-defense, where jury could not have been misled.

A. D. KIRK and D. D. FIELDS for appellant.

FRANK E. DAUGHERTY, Attorney General, O. A. STUMP, ROBERT BLAIR and R. MONROE FIELDS for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Affirming.

Appellant, Gordon Adams, indicted for murder, was tried and found guilty of manslaughter and sentenced to confinement in the penitentiary for fifteen years. He appeals.

He vigorously insists that the trial court erred in permitting the witnesses to go too much into detail with reference to the previous difficulties between appellant and deceased, evidence of which was introduced by the Commonwealth to establish his motive for the commission of the crime charged. It is conceded that the Commonwealth was entitled to prove as tending to establish motive that there had been previous difficulties between appellant and deceased. Certainly enough of the facts may be heard in evidence to accomplish the purpose for which it is competent, i. e., to show motive. His complaint is

that the trial court, over his objection, permitted the witnesses to give all the details of the previous difficulties. We find the record sustains appellant's contention that the trial court did permit the witnesses herein to go fully into the details of the previous difficulties. Appellant and deceased appear to have lived in adjoining houses. The evidence relative to the previous trouble between them was directed largely toward that which occurred the night previous to the homicide in which a number of shots were fired by appellant from about his home into that of deceased and by deceased from about his home into that of appellant. The surviving widow of deceased was permitted over appellant's objection, to give all of the details of that shooting and was the only witness for the Commonwealth who testified on that subject. Appellant for himself, while a witness, was permitted to testify fully as to all of the details of that previous trouble. No other witness testified for the defendant on that question. According to the testimony of deceased's surviving widow, the difficulty on the previous night was begun by appellant shooting into their home. According to his testimony it was begun by deceased or one of his sons shooting into appellant's home. He was permitted to testify that after the shooting ceased he left home and saw deceased and one of his sons in front of their home; that they there accosted him, and had much complaint to make that one of appellant's shots had penetrated and broken a five-gallon container filled with whiskey possessed by them for sale, resulting in the loss of the whiskey. It is manifest that the trial court erred in admitting in evidence too much of the details of the previous difficulty. The question then arises as to whether the error was prejudicial under the facts of this case. Only one witness for the Commonwealth and one for the defendant testified as to these matters. It would seem that the surviving widow of the deceased and the defendant who were the witnesses on that question might be regarded by the jury as being equal in interest and bias as witnesses, the one for a conviction and the other for an acquittal. The testimony from the lone witness of the Commonwealth, who was permitted to go into the details of the previous difficulty, merely tended to establish that appellant was at fault and responsible for the previous difficulty. That for appellant not only tended to establish that deceased was at fault and responsible for the previous difficulty, but that he was a bootlegger and had five gallons of

whiskey on hand for sale and lost it because one of the shots from appellant's pistol penetrated the container which held it. Appellant admitted firing the shot that killed deceased. His defense was that he was compelled to do so in order to save his own life. Deceased was killed the next day after the previous difficulty, the details of which were erroneously permitted to be heard upon this trial. His evidence that deceased lost five gallons of whiskey which he had on hand for sale as a result of the previous difficulty, which no one contradicted, certainly had a tendency to cause the jury to believe that deceased was in a frame of mind when he and appellant met the following day well calculated to cause him, as appellant testified, to renew the attack and place the appellant in a position of necessity to defend himself. In view of all these things the court cannot hold the erroneous evidence to have been prejudicial.

The contention made for appellant that the verdict is not sustained by the evidence, but appears to have been the result of passion and prejudice upon the part of the jury is predicated largely upon the fact that the jury was permitted to hear the incompetent evidence above discussed. The evidence for the Commonwealth establishes that on the day he was killed, deceased, Dan Stivers, then 66 years of age, and a large, fleshy man, went from his home to that of Mrs. Add Polley, a widow, and slaughtered a hog for her. After doing so and about eleven o'clock a. m., he left her home to return to his own. He had with him his butcher knife, which he had used in slaughtering the hog, and a bucket containing a part of the backbone and some spareribs of the hog he had killed. It appears that he had at the home of Mrs. Polley a small quantity of whiskey in a soda pop bottle, and that while there he gave one of Mrs. Polley's sick children a drink of it. Deceased was walking and before he reached home met appellant, who was riding on horseback. Mrs. Sadie Holbrook, who was looking that way, heard the shot that killed him, but was too far away to hear anything that was said by them; and, in fact, testified that until the shot was fired she had not seen deceased. She did, however, see him stagger and fall immediately after the shot was fired. She testified that until the shot was fired appellant had not stopped the horse he was riding, and that he then rode off down the road around a curve and passed out of her sight. She testified that about a minute after deceased fell, Willie Sparks went to

him, bent over, and looked at him, and then without having touched him went to William Holbrook's gate and called him. William Holbrook and his wife testified for the Commonwealth. They both were at their home when the shooting occurred. It stood 20 to 25 feet from where the deceased was killed. They had not seen anyone or heard anything indicating trouble until the pistol shot fired. When the shot fired Mrs. Holbrook opened the door and saw appellant on his horse immediately in front of her gate looking back to where deceased had fallen, and in a moment she saw Willie Sparks, who came and called her husband. They then went to deceased, who was found lying in the road about twenty-five feet above their home in the edge of the creek. The bucket of meat was sitting near him and the butcher knife had fallen from his pocket and near him also was found an open pocket knife identified as belonging to deceased.

Appellant's testimony as to how and why he killed deceased, perhaps, may be best given in his own language. He testified:

"Q. Now tell the jury just what happened when you met up with him? A. Well, I saw him coming, I was riding along in kindly of a slow pace and he was coming up the road and had a little bucket in his hand and I come up to him, five or ten steps, and he set the bucket down, took his pains to set it down, I noticed that but didn't know what he meant, and I come on up and said, 'Howdy, uncle Dan, or good morning, uncle Dan,' and he said—about that time he reached out with his left hand and took hold of my bridle rein and says, 'God damn you, I have been looking for you all morning,' that is the words he spoke, and I says, 'Don't do that, uncle Dan, don't do that.' About that time I gave my horse a rein and jerked him out of his hand and my horse wheeled kindly back around just in front feet and he come at me right on with that knife, then he grabbed the bridle reins again and got me up here on one leg with the other hand and let loose of the bridle rein and got me on the leg with one hand and I shoved him back with my foot and kept shoving him back, I believe three times, and was begging all the time for him to let me go on, and I was kindly afraid to go on, couldn't ride over him and me begging to him— The court: Just tell what happened. A. And so I shoved him back about two or three times and the last time

I shoved him back he said, 'God damn you, I will get something you can't shove back,' and throwed his hand back like he was going to get a gun and I shot the old man.''

Willie Sparks, who appears to have been nearby when the difficulty occurred, by his testimony corroborated appellant as to how and why he killed deceased. He appears, however, to be appellant's brother-in-law. No pistol was found upon or about deceased, Stivers. Appellant was on horseback, while deceased was walking. It is improbable, as appellant and his witness Sparks testified, that deceased would have attacked him with a pocket knife when he had a butcher knife with him. It is more than probable that, as appellant testified, immediately before he shot him deceased undertook to draw a gun when he had none. The court can readily understand how the jury rejected appellant's plea of self-defense and declined to find him not guilty on that ground. Having rejected that plea it can not be said under the facts of this case that 15 years' confinement in the penitentiary fixed by the jury as appellant's punishment for the homicide, is excessive or reflects prejudice or passion upon the part of the jury entering into the fixing of the penalty; nor can it be said that the verdict is flagrantly against the evidence.

Appellant insists that the trial court erroneously overruled his motion for a continuance without permitting him to read the affidavit filed as the deposition of the absent witness, Bettie Jane Webb. The record discloses that appellant answered not ready, moved for a continuance, and filed an affidavit in support of his motion. The record is silent as to whether or not the attorney for the Commonwealth consented that the affidavit might be read as the deposition of the absent witness, but does recite that the motion for a continuance was overruled and that appellant excepted. Under the provisions of section 189 of the Criminal Code of Practice, it would have been an abuse of the trial court's discretion to have overruled appellant's motion for a continuance unless the attorney for the Commonwealth consented that the affidavit filed might be read as the deposition of the absent witness. The question, then, is presented whether in the state of the record the court will assume that the trial court erroneously refused the continuance without the Commonwealth consenting that the affidavit be read as the deposi-

tion of the absent witness or that the motion to continue was overruled because the attorney for the Commonwealth did so consent. That question has heretofore been presented to and determined by this court. In McKinzie v. Commonwealth, 193 Ky. 781, it was said:

> "The record does not show whether or not the Commonwealth's attorney agreed that this might be done, as is provided by section 189 of the Criminal Code he shall in such cases, but whether so or not the defendant, if he desired to avail himself of this privilege, clearly waived it by failing to offer to introduce his affidavit as the evidence of Dye."

Thus the question of practice in the premises has heretofore been settled by this court. The order of continuance must affirmatively show that the trial court overruled the motion for a continuance after the attorney for the Commonwealth refused to consent that the affidavit might be read as the deposition of the absent witness, or must show that appellant offered to read the affidavit as such, and that the trial court refused to permit him to do so. In may be added that in this case the affidavit disclosed due diligence upon the part of the appellant for the procurement of the attendance of the witness.

Appellant complains that the trial court did not use the word "feloniously" in the instruction defining murder and manslaughter, and did not define that word to the jury. That contention has been answered adversely to appellant in Frazier v. Commonwealth, 194 Ky. 240; Peace v. Commonwealth, 146 Ky. 754, and Carson v. Commonwealth, 149 Ky. 294.

Appellant insists that the instruction on self-defense was erroneous in that it confined him in defending himself merely to shooting deceased and did not advise the jury that if necessary in so doing he had the right to kill deceased. Instructions so worded as to confine the right of one charged with murder, whose plea is self-defense, merely to the right to shoot in self-defense have been condemned by this court in Blanton v. Commonwealth, 210 Ky. 542, 276 S. W. 507; Barker v. Commonwealth, 159 Ky. 304, 166 S. W. 981; and Reynolds v. Commonwealth, 183 Ky. 375, 209 S. W. 346. It was considered possible that the jury in those cases might have so construed the instructions given, because the first part of the instruction read: "Although you may believe from the evidence

that the defendant shot and killed deceased;" and, then after advising under what circumstances the defendant had the right to act in defense of himself, closed by saying: "Necessary to shoot the deceased in order to avert the danger." Under instructions so worded there is room for the conclusion that a jury might be misled and conclude that although a defendant may have the right to shoot his adversary he has not the right to kill him in order to avert from himself impending danger at his hands. The instruction on self-defense in this case, however, is not susceptible of that construction. In the first part of the instruction it used the expression "shot said Dan Stivers," and in the latter part of the instruction it read "to shoot the deceased." The evidence disclosed that appellant fired only one shot and shot deceased only one time. Under those circumstances and as the instruction was worded in this case the jury could not have been misled and necessarily understood that if facts consonant with the law of self-defense existed when appellant shot deceased, all of which were aptly submitted by the instruction given, then appellant had the right to shoot deceased as he did from which his death resulted, and that it was their duty in that case to acquit him upon the grounds of self-defense and apparent necessity. There was no opportunity for the jury to be misled by the instruction herein as given. Other perfunctory objections to the instructions are mentioned in the brief for appellant, but do not possess sufficient merit to require a discussion of them.

Upon the whole case this court has concluded from its consideration of the record herein that appellant's trial was devoid of error prejudicial to his substantial rights, and that the judgment herein must be affirmed.

Judgment affirmed.