## Neace v. Commonwealth.

(Decided March 12, 1929.)

(As Modified, on Denial of Rehearing, November 12, 1929.)

S. M. WARD and VERNON FAULKNER for appellant.

J. W. CAMMACK, Attorney General, and GEORGE HUNT MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE McCAND-LESS—Affirming.

Zach Neace was indicted and tried for the murder of Eli Elam, was convicted of manslaughter, and sentenced to the penitentiary for 21 years. The homicide occurred at the home of deceased in the mining camp of the Kentucky Block Coal Mining Company, at about 11 o'clock on a Sunday morning. Deceased was a negro, but a number of white men were at his home playing poker. Defendant had taken part in the game earlier in the morning, but had ceased playing and left the premises. He returned later, and he and Mossy Graham, who was not in the game, went into the kitchen, discussing a newspaper subscription. Deceased left the card table and followed them into the kitchen, and according to the witnesses for the commonwealth said to Neace, "You ought not come in here raising any G— d—— disturbance." Neace responded in a courteous way, saying, if he was raising a disturbance, he would get out. He and Graham then stepped out of the kitchen onto the porch, and deceased went back to the card game. On reaching the porch, Neace, who had his hand in his pocket, made some remark about showing this man who was the best man, and Elam returned and asked, "What was that you said, Zach?" and further said, I will slap your G—— d—— head off," and shoved him off the porch. Elam then started to run back into the house, when Neace shot him twice from the ground, and he died almost immediately. Elam was in his shirt sleeves, and had no weapon upon his person, and the commonwealth witnesses saw no demonstration of drawing a weapon, or anything indicating the possession of a weapon. The doctor discovered two wounds entering from the rear, one near the spinal column and the other a few inches therefrom.

The defendant's testimony coincides with that of the commonwealth, except he says he was crippled, and when deceased knocked him off the porch his feet became entangled in some wire netting, and as he attempted to rise deceased ran his hand into his bosom. Deceased was

a dangerous character, and he thought he was going to draw a weapon to shoot him, and in self-defense drew his pistol and fired twice. Deceased turned as he shot, which caused the bullets to enter from the rear.

Rachel Fugate, who was in her residence 12 feet away, testifies that she saw deceased running his hand in his bosom. Other witnesses corroborated defendant as to the dangerous character of deceased. It will be seen that there is but little contradiction in the evidence, and under all the facts the defendant acted under strong provocation; perhaps acted in self-defense, as claimed by him. But admittedly he went armed to the house of deceased. According to the commonwealth's witnesses he had his hand in his pocket at the time of the dispute with the deceased, who was unarmed, and who, upon shoving defendant off the porch, started running back into the house, and was so retiring without any further demonstration of violence at the time he was shot. This was sufficient evidence to submit the case to the jury to uphold their verdict.

The chief ground relied on for reversal is that the grand jury was not properly in session at the time the indictment was returned, and that for this reason the indictment was void. The record shows that the grand jury was duly impaneled on the first day of the September term of court, and on the 6th day of that term the following order was made:

"Perry Circuit Court. Sept. Term, 6th day, 15th of Sept. 1928. It is ordered by the court that the grand jury be and the same is hereby extended for three more days next week in order to complete their work."

On the eleventh day of the term an order was made returning the indictment in this case, this being set out in full in the record. It is further certified in the bill of exceptions that "no other order was made extending the grand jury after the one made on the sixth day of the term until the twelfth day of the term, at which time an order was entered again extending the grand jury for three days more during the week thereafter." From this record it is argued that the period of extension granted on the sixth day of the term expired on the ninth day of the term, and as no other order was entered extending the term of the grand jury until the twelfth day of the term, and the indictment in this case was returned

on the eleventh day of the term, that the grand jury was not legally in session at that time, and if not legally in session the indictment returned by it was ineffective for any purpose. But as this question was necessarily passed upon by the circuit judge, on a motion to set aside the indictment, his ruling thereon is not subject to exception, and cannot be considered on appeal. See section 281, Criminal Code of Practice; Brannon v. Com., 215 Ky. 589, 286 S. W. 785; Sloan v. Com., 211 Ky. 318, 277 S. W. 488.

It is next urged that the court erred in overruling defendant's motion for a continuance. The indictment was returned on the 21st of September. On the following day the defendant was brought into court and informed of the nature of the indictment, and his case assigned for trial on the 28th. At the same time the court appointed Vernon Faulkner and Sam Ward to represent him as counsel. On the call of the case, in addition to other motions, defendant filed a motion for continuance, accompanied by affidavits of Faulkner and Ward to the effect that they had not had an opportunity to fully investigate his case, and his own affidavit showing the absence of Rachel Fugate and Arthur Noble. This motion was overruled and the case proceeded to trial. It appears that counsel had seven days with which to familiarize themselves with the case, and it further appears that the case was skillfully conducted, and it is not made to appear that a better defense could have been made with more time; hence we cannot say appellant was prejudiced in not being granted more time for preparation.

As to the absent witnesses, the orders do not show the commonwealth's attorney consented for the statements in the affidavit to be read as the depositions of Rachel Fugate and Arthur Noble. However, such statement was read as the deposition of Rachel Fugate, and no reference on the trial was made to the witness, Arthur Noble. In the late case of Adams v. Com., 212 Ky. 334, 279 S. W. 332, we held that for such a contention to avail "the order of continuance must affirmatively show that the trial court overruled the motion for a continuance after the attorney for the commonwealth refused to consent that the affidavit might be read as the deposition of the absent witness, or must show that appellant offered to read the affidavit as such, and that the trial court refused to permit him to do so."

Otherwise this court will presume that the proceedings are regular, and that such permission was given before the motion for a continuance was overruled. That case seems conclusive of this contention. Defendant has received a very severe sentence on disputable facts, but as he has had a fair and impartial trial, upon facts sufficient to sustain the verdict, this court cannot reverse, except for errors occurring in the court below.

None such appearing, the judgment is affirmed.