**Kenneth CHAFFINS, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Jan. 28, 1955.

A. W. Mann, Ashland, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

MONTGOMERY, Justice.

Kenneth Chaffins appeals from a judgment convicting him of malicious shooting and wounding of Marvin Munn with the intent to kill, in which his punishment was fixed at confinement in the state reformatory for a period of two years and one day. He urges as grounds for reversal: (1) that the trial court erred in overruling his motion for a continuance; and (2) that the verdict was contrary to the great preponderance of the evidence and is not supported by the evidence.

Marvin Munn and Kenneth Chaffins are brothers-in-law, Munn having married Frances Chaffins, sister of appellant. Munn and his wife had grown children, including Jewnettie Munn, who lived with them, and Elizabeth Angel, who resided with her family in an apartment house owned by the Munns in Portsmouth, Ohio. About two days prior to the shooting, Munn had left his home and begun to sleep in his place of business. He and his wife, apparently, were estranged. The shooting occurred on April 4, 1954, at Munn's home on South Shore in Greenup County, a residential community across the Ohio River from Portsmouth.

Kenneth Chaffins lived a few miles from South Shore on Tygart Creek in Greenup

County, having previously lived at or near Portsmouth, Ohio. He had married Blanche McCormick, but had obtained a divorce from her on the ground of her alleged intimacy with his brother-in-law, Marvin Munn. Appellant had been granted custody of their two small children. A young brother of his former wife, Johnny McCormick, and a housekeeper, Lucille DeBord, lived with appellant also.

For some years prior to the shooting, Marvin Munn had been engaged in various enterprises, including illicit traffic of intoxicating liquors, and he and his wife had acquired considerable property, title to all of which was in the wife.

Prior to the divorce, appellant claimed to have intercepted a letter written by his wife which had convinced him that his wife was unduly intimate with Marvin Munn, his brother-in-law. Bad feeling existed between Chaffins and Munn because of this, and further differences had arisen between them, growing out of their business relationships. Chaffins had made numerous threats toward Munn, some of which had been communicated to Munn.

On the evening prior to the shooting, appellant, Johnny McCormick, Lucille DeBord, and appellant's two small children went to the home of Elizabeth Angel in Portsmouth, Ohio, and spent the night. The next morning, Sunday, appellant arose early, went to the home of Clifford Chaffins, his brother, in Portsmouth, had breakfast, and returned to the apartment of Elizabeth Angel. During his absence, Marvin Munn came to the Angel apartment, remained there briefly, and later returned and was there when Kenneth Chaffins returned and parked his car in front of the apartment.

Johnny McCormick warned appellant not to come in, that Marvin Munn was there to kill him, or words to that effect. Munn had a pistol in his jacket pocket. McCormick was unsuccessful in keeping Munn from opening the door, and when Munn came out, he was pale, excited, and visibly perturbed. Appellant made some inquiry about seeing his children, and Munn passed appellant's car and went on down the street.

Later in the morning, appellant and the members of his household returned to his home on Tygart Creek. During the morning, Marvin Munn also made a trip up Tygart Creek, passing the home of appellant, allegedly to deliver bottled gas to two customers. Also during the morning, Clifford Chaffins, brother of Kenneth, Frances Munn, wife of Marvin Munn, Blanche Chaffins, former wife of appellant, Blanche's mother, and her younger brother, Ralph, all gathered at the home of appellant on Tygart Creek before going to Munn's home about noon. For what purpose the clan gathered it is not shown, except possibly to visit the elderly father of appellant.

Lucille DeBord, appellant's housekeeper, had decided to quit her job with him and to go to some place in Missouri. In view of this, Frances Munn had agreed to take care of appellant's small children while he was at work. The shooting took place at the home of Marvin Munn. Appellant was drinking a cup of coffee in the living room, where he and his brother, Clifford, were sitting. Jewnettie Munn and one of the small Chaffins children were in the house. Johnny McCormick and the other Chaffins child were playing in the front yard and ran into the house as Marvin Munn approached, walking rapidly and with his hands in the side pockets of his jacket. Johnny McCormick had seen a pistol in his jacket pocket at Portsmouth that morning. He also testified that appellant had been drinking to some extent before the shooting. Appellant had previously gone to his car and brought in a pistol and placed it on the living room table, allegedly because he had seen State Police officers pass by and was afraid they would search his car. As Munn was coming up the walk to the house, Frances Munn told appellant he had better leave, but he replied that it was too late to run. He then got up, walked across the room and picked up his gun, stuck the barrel behind his belt, and stood in the middle of the room. When Munn entered the living room, everyone

had left except appellant and his brother. The evidence is in dispute as to what occurred from the time Munn started to enter the living room until the shooting was over.

Munn admitted having a gun but denied having it in his hand or ever attempting to fire it. He claimed he spoke to Clifford Chaffins but didn't see appellant at that time and that both brothers shot him. He claimed to have received thirteen wounds and that two other shots missed him.

Appellant and his brother testified that appellant fired six shots at Marvin Munn after Munn had jerked his gun out and said, "This is it." Both testified that no one fired any shots except appellant. Appellant urges that he was entitled to a verdict of acquittal at the hands of the jury because the testimony was as consistent with the theory of innocence by reason of shooting in self-defense as it was with guilt. This ground will be considered first.

■ It should be noted that no motion for peremptory instruction was ever offered. No complaint was made to the instructions which included one on self-defense. As we have seen from a review of the evidence, the testimony was in conflict as to whether appellant shot in self-defense. In such case, it is a question for the jury to decide.

Appellant did not question the insufficiency of the evidence, either on trial or on appeal. He says, in effect, there was evidence to support both theories of the case but that the jury should have accepted appellant's theory.

In denying appellant's plea of self-defense, the jury may well have had in mind the ill feeling between both men, the threats, the fact that each man was carrying a gun, and that appellant took his pistol and went to Munn's home after learning that Munn had a gun that morning. The jury probably had in mind that appellant walked to the table to obtain his gun and refused to leave when warned of Munn's approach. These and other kindred facts developed in the proof tend to indicate that appellant was seeking trouble rather than seeking to avoid it and are wholly inconsistent with any plea of self-defense. Apparently, the jury took this view of the case, which may well have been strengthened by appellant's use of more force than was necessary to repel the alleged attack or to avoid the apparent danger. He fired six shots and Munn fired none. When the evidence is conflicting, it is the duty of the jury to sift the evidence for the truth upon which to base their verdict, and when the jury has so done, it will not be disturbed.

■ The credibility of the witnesses is peculiarly a question for the jury, and their finding or verdict is conclusive on appeal when the evidence is conflicting. Reference is made to 6 Kentucky Digest, Part 2, Criminal Law, ⊜1159(4), Pages 527–530, for many cases so holding.

■ Appellant insists that the court erred in denying his motion for a continuance because of the absence of the witnesses, Lucille DeBord and Elizabeth Angel. The record shows that the motion was not filed until after both parties had answered ready for trial, plea had been entered, and a jury selected. The record shows only that the motion was overruled, to which appellant excepted.

According to the record, appellant had already announced ready for trial before filing his motion for continuance, which is a situation very hard to understand. In such a case, the motion would be too late since appellant would already have announced ready for trial in the absence of the two witnesses mentioned.

The record is silent as to whether the prosecution consented that the affidavit be read as the depositions of the absent witnesses under Section 189 of the Criminal Code of Practice. There is no showing in the record that the appellant ever offered to read the affidavit as the depositions of the above witnesses or that the trial court refused to permit him to do so. In Adams v. Commonwealth, 212 Ky. 334, 279 S.W. 332,

334, approving McKinzie v. Commonwealth, 193 Ky. 781, 237 S.W. 386, the Court said:

"Thus the question of practice in the premises has heretofore been settled by this court. The order of continuance must affirmatively show that the trial court overruled the motion for a continuance after the attorney for the commonwealth refused to consent that the affidavit might be read as the deposition of the absent witness, or must show that appellant offered to read the affidavit as such, and that the trial court refused to permit him to do so."

When the record is silent, it will be presumed that the court in these respects acted correctly. Appellant waived the privilege provided by Section 189 of the Criminal Code of Practice by failing to offer to introduce his affidavit as the evidence of Lucille DeBord and Elizabeth Angel.

It is unnecessary to pass on the questions as to whether appellant was diligent in obtaining the attendance of the two absent witnesses or whether the evidence was merely cumulative.

Judgment affirmed.